IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                          No. CR 15-1506 JB

VICTOR HURTADO,

       Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on: (i) the Defendant Victor Hurtado's Motion for Compassionate Release, filed March 29, 2021 (Doc. 108)("Compassionate Release Motion"); and (ii) the Defendant's Opposed Motion for Sentence Reduction Under Guideline Amendment 821, filed May 31, 2024 (Doc. 159)("Sentence Reduction Motion"). The Court held a hearing on July 3, 2024. Clerk's Minutes at 1, (July 3, 2024), filed July 3, 2024 (Doc. 164). The primary issues are: (i) whether the Court should grant Defendant Victor Hurtado compassionate release from his 141-month imprisonment sentence for health reasons, including his exposure to COVID-19; and (ii) whether the Court should reduce Hurtado's sentence under 18 U.S.C. § 3582(c)(2), because the United States Sentencing Commission ("Sentencing Commission") has lowered Hurtado's sentencing range by enacting the newly effective and retroactively applicable criminal history "status point" calculation amendment to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). The Court denies the Compassionate Release Motion, because: (i) Hurtado's medical conditions and family circumstances are not extraordinary and compelling reasons warranting compassionate release; and (ii) a sentence reduction is not consistent with the applicable Guidelines policy statement, U.S.S.G. § 1B1.13. The Court grants the Sentence Reduction Motion, because: (i) Hurtado qualifies for the status point reduction; (ii) the reduction

Hurtado requests is consistent with the applicable Guidelines policy statement, U.S.S.G. § 1B1.10; and (iii) the 18 U.S.C. § 3553(a) sentencing factors warrant a reduction in Hurtado's sentence. Accordingly, the new Sentencing Guidelines range is 135-141 months, and the Court re-sentences Hurtado to a sentence of 135 months of incarceration.

## FACTUAL BACKGROUND

On January 2, 2014, in Albuquerque, New Mexico, Hurtado entered a residence and stole a television.   See United States Probation Office's ("USPO") Presentence Investigation Report ¶ 49, at 10, filed January 18, 2024 (Doc. 153)("PSR").  The State court sentenced Hurtado to three years of probation to expire on January 10, 2017.  See PSR ¶ 49, at 10.  While on probation, around January 6, 2015, in Albuquerque, Hurtado and an accomplice robbed a Smith's Food and Drug pharmacy at gunpoint and stole over 2000 prescription pills including Percocet, Oxycodone, and OxyContin.  See PSR ¶¶ 11-16, at 5-6.  The federal Grand Jury charges Hurtado in a five-count indictment for violations of the Hobbs Act, 18 U.S.C. § 1951, which prohibits robbery and extortion.  See PSR ¶ 1, at 4[1]; 18 U.S.C. § 1951.  Then, on March 5, 2015, police arrested Hurtado after a traffic stop, and seized a loaded handgun, fifty-four grams of heroin, and 133 grams of methamphetamine.  See PSR ¶ 13-16, at 5-6.  On July 1, 2015, Hurtado pled guilty to Counts 1, 2, and 5 of the Indictment in connection with the pharmacy robbery, and to an information charging possession with intent to distribute methamphetamine in connection with the traffic stop arrest. See Plea Agreement ¶ 3, at 2, filed July 1, 2015 (Doc. 37).  Hurtado agreed to a sentencing range

---

[1]The counts are: Interference and Conspiracy to Interfere with Interstate Commerce by Robbery and Violence (Count 1), Brandishing, Using, Carrying and Possessing a Firearm During and in Relation to and in Furtherance of a Crime of Violence (Count 2), Robbery Involving Controlled Substances (Count 3), Theft of Medical Products (Count 4), and Possession with Intent to Distribute Oxycodone (Count 5).  See Indictment at 1, filed April 28, 2015 (Doc. 1)(Sealed).

between 120 to 216 months, which is 10 to 18 years.  See Plea Agreement at 7.  USPO calculates Hurtado's total offense level as 23.  See PSR ¶ 32, at 8.  Hurtado's criminal history category of III -- from a total criminal history score of four -- adds up two points from his prior criminal convictions and two points from his commission of the offense while under a criminal justice sentence under U.S.S.G. § 4A1.1(d).  See PSR ¶ 51-52, at 10.  USPO recommends a sentencing range of 57 to 71 months, plus 84 months for Count 2 which must run consecutively, for a total range of 141 to 155 months.  See PSR ¶ 76-78, at 14.  The Court sentenced Hurtado to the bottom of the range at 141 months imprisonment, with 255 days of credit for time served.  See Amended Judgment in a Criminal Case - Reason: Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36) at 1-3, filed January 25, 2016 (Doc. 82)("Judgment").

Hurtado has been incarcerated since April 19, 2015, and his release date is April 29, 2026. See USPO Retroactive Guideline Amendment - Eligible Memorandum at 2, filed January 18, 2024 (Doc. 156)("Retroactive Guideline Amendment Memo").  He has served a majority of his term: as of October 30, 2024, he has served eight years, ten months, and eight days -- 106 months and twenty days -- or roughly seventy percent of his sentence.  See Retroactive Guideline Amendment Memo at 2.  Hurtado is now thirty years old.  See PSR at 3.

## PROCEDURAL BACKGROUND

Hurtado first filed his Compassionate Release Motion on March 29, 2021.  See Compassionate Release Motion at 1.  He notes medical needs and also family care needs.  See Compassionate Release Motion at 2.  Hurtado lists three medical needs.  See Compassionate Release Motion at 2; Bureau of Prisons Health Services Clinical Encounter Report at 2-57, filed February 7, 2022 (Doc. 116-1)("Medical Report").  First, Hurtado has an untreated growing abscess in his side.  See Medical Report at 56.  Second, Hurtado had multiple teeth pulled as a

result of delayed dental care.  See Medical Report at 42.  Third, Hurtado contracted Hepatitis C while incarcerated.  See Medical Report at 42.  Hurtado argues that these "underlying risk factors" and his "serious health conditions" are extraordinary and compelling reasons to warrant release. Compassionate Release Motion at 6.  He also states that these medical conditions result from the Federal Correctional Institution, Sheridan's ("Sheridan") operational failures and COVID-19 restrictions.  See Compassionate Release Motion at 3-4.  The United States filed the Response to Defendant's Motion for Compassionate Release (Doc. 108)[sic], filed April 19, 2021 (Doc. 111)("Compassionate Release Response"), arguing that Hurtado fails to exhaust his administrative remedies prior to filing his Compassionate Release Motion, and that, furthermore, he does not prove extraordinary and compelling reasons for granting compassionate release.  See Compassionate Release Response at 1.

On June 25, 2023, Hurtado sent a request to the warden for a § 3582(c)(1)(A) sentence reduction, citing the reasons of COVID-19, conditions of confinement, "medical/psych," family circumstances, sentencing changes, and time served.  Inmate Request to Staff at 6 (dated June 25, 2023), filed September 5, 2023 (Doc. 151)("Warden Letter").  Then, on July 10, 2023, Hurtado filed a pro se compassionate release motion in federal court, asserting -- incorrectly -- that thirty days had passed since he submitted the Warden Letter, and he has, therefore, exhausted his administrative remedies.  See Motion for Reduction in Sentence (RIS) [sic], (dated July 10, 2023), filed Sept. 5, 2023 (Doc. 151)("Compassionate Release Letter").

Hurtado, in the alternative, moves for a sentence reduction, because the 2023 Criminal History Amendment to the Sentencing Guidelines retroactively applies to his sentence.  See Sentence Reduction Motion at 1; 2023 Amendments to the Sentencing Guidelines.  Hurtado also filed two brief letters requesting the Court grant a sentence reduction.  See Letter from Hurtado to

Honorable Judge Browning, filed March 25, 2024 (Doc. 157); Letter to the Court, filed May 29, 2024 (Doc. 158).  The United States agrees that Hurtado is eligible for a sentence reduction here, but contends that the court should deny a reduction based on the § 3553(a) sentencing factors.  See United States' Response to Defendant's Opposed Motion for Sentence Reduction Under Guideline Amendment 821, filed June 13, 2024 (Doc. 161)("Sentence Reduction Response").

## LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), The Supreme Court of the United States severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges advisory.  See United States v. Booker, 543 U.S. at 261.  In excising the two sections, The Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.  Accordingly, even though the Guidelines are not mandatory, courts must consult them for advice in arriving at an appropriate sentence.  See Peugh v. United States, 569 U.S. 530, 541-42 (2013).  The Guidelines provide a starting point for the court's determination of a proper sentence.  See Gall v. United States, 552 U.S. 38, 50 n.6 (2007)("[D]istrict courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."); Peugh v. United States, 569 U.S. at 541 ("The post-Booker federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review.").

Congress has directed sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with" the four purposes in 18 U.S.C. § 3553(a)(2); this is commonly

known as the "Parsimony Clause."  <u>See</u> 18 U.S.C. § 3553(a).  The four enumerated purposes are:

>   **(A)**    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   **(B)**    to afford adequate deterrence to criminal conduct;
>
>   **(C)**    to protect the public from further crimes of the defendant; and
>
>   **(D)**    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

>   [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to further consider: (i) "the nature and circumstances of the offense," as well as the defendant's "history and characteristics"; (ii) the available sentences; (iii) the Guidelines; (iv) any pertinent Sentencing Commission policy statements in effect on the date of sentencing; (v) the policy favoring uniformity in sentences for defendants who commit similar crimes; and (vi) the need to provide restitution to victims.  18 U.S.C. § 3553(a)(1), (3)-(7).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  See <u>United States v. Booker</u>, 543 U.S. at 261-62.

The United States Court of Appeals for the Tenth Circuit holds that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration. <u>See</u> <u>United States v. Cage</u>, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an

expression of popular political will about sentencing that is entitled to due consideration." United

States v. Cage, 451 F.3d at 593.  A court's careful consideration of the Guidelines is proper in light

of the fact that "[t]he Guidelines as written reflect the fact that the Sentencing Commission

examined tens of thousands of sentences and worked with the help of many others in the law

enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."

Rita v. United States, 551 U.S. 338, 349 (2007).

"[A] sentence within the applicable Guidelines range is presumptively reasonable." United

States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v.

United States, 551 U.S. at 349, as recognized in United States v. Zamora-Solorzano, 528 F.3d

1247, 1251 n.3 (10th Cir. 2008).  This presumption, however, is an appellate presumption, and not

one that the trial court can or should apply.  See Kimbrough v. United States, 552 U.S. 85, 90-91

(2007); Gall v. United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 351.  Instead,

the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor

of the advisory[2] Guidelines sentence.  See Kimbrough v. United States, 552 U.S. at 90-91; Gall v.

---

[2]Attorneys and courts often say that the Guidelines are advisory, but it is more accurate to
say that the resulting Guidelines ranges are advisory.  See Gall v. United States, 552 U.S. 38, 46
(2007)("As a result of our decision [in United States v. Booker], the Guidelines are now
advisory . . . ."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence
ultimately imposed by the district court was based on a correctly calculated Guidelines range, a
stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are
advisory."); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)("[T]he Guidelines are
advisory, not mandatory.").  The Court must consider the Guidelines, see Gall v. United States,
552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of
any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see
Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings
by correctly calculating the applicable Guidelines range.").  The Court is not mandated to apply,
however, a sentence within the calculated Guidelines range.  See United States v. Sierra-Castillo,
405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign
sentences outside of the Guidelines-authorized range . . . .").  Accord United States v. Chavez-

United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 351.

   While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker

---

Rodarte, No. CR 08-2499, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

   The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

   The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States, 552 U.S. 85 (2007), that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. at 101 (alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

---

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24 (D.N.M. June 20, 2014)(Browning, J.)(emphasis in United States v. Nolf, but not in Gall v. United States).

arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479, 2008 WL 2229550, at *6 (D.N.M. February 13, 2008)(Browning, J.). The Supreme Court has recognized, however, that sentencing judges are "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89. The Court faithfully considers the § 3553(a) factors at sentencing. See, e.g., United States v. Woody, No. CR 18-3902 JB, 2021 U.S. Dist. LEXIS 12110 at *1-2 (D.N.M. Jan. 22, 2021)(Browning, J.)(weighing "carefully" the factors in 18 U.S.C. § 3553(a) to conclude a life sentence is appropriate). For example, in United States v. Almendares-Soto, No. CR 10-1922 JB, 2010 U.S. Dist. LEXIS 137157 (D.N.M. Dec. 14, 2010)(Browning, J.), the Court applies the § 3553(a) factors to deny the defendant, an illegal immigrant, a variance from the guidelines because his re-entry into the United States to provide for his two children and two siblings does not place him "outside the heartland of cases" which warrants a departure. See 2010 U.S. Dist. LEXIS 137157 at *24-25. On the other hand, in United States v. Jager, No. CR 10-1531 JB, 2011 U.S. Dist. LEXIS 21203, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), the Court grants a variance, because the defendant's military service is "superior and uniformly outstanding," as the defendant is "trustworthy[] and dedicated, and he served with distinction." 2011 U.S. Dist. LEXIS 21203 at *39-40. See United States v. Chavez-Rodarte, No. CR 08-2499, 2010 U.S. Dist. LEXIS 76799 at *11 (D.N.M. July 16, 2010)(Browning, J.)(sentencing the defendant to 37 months imprisonment, after granting a slight variance, because the sentence reflects that he committed his prior crimes when he was "young and immature," his offense of illegal re-entry is serious but non-violent, and the sentence promotes respect for the law

and provides a more just punishment than a guidelines sentence).

### LAW REGARDING 18 U.S.C. § 3582(C)(2) SENTENCE REDUCTIONS

"Generally, a district court may not modify a term of imprisonment once it has been imposed." United States v. Williams, 575 F.3d 1075, 1076 (10th Cir. 2009). "A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so." United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996). 18 U.S.C. § 3582(c)(2) establishes a narrow exception to this general rule of finality "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(2). When the Sentencing Commission revises the Guidelines in a way that reduces the Guidelines range for "a particular offense or category of offenses," the Sentencing Commission must "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u). "In this way the Act requires the Commission to decide whether amendments to the Guidelines should have retroactive effect." Hughes v. United States, 584 U.S. 675, 681 (2018). If an amendment applies retroactively, § 3582(c)(2) provides that "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). See United States v. McDonald, No. CR 22-1317 JB, 2024 WL 2110525 at *1 (D.N.M. May 10, 2024)(Browning, J.)(granting a sentence reduction based on a retroactively applicable amendment to the Guidelines).

The Tenth Circuit has explained that a defendant must satisfy three prongs[3] to qualify for a sentence modification under Section 3582(c)(2). See United States v. C.D., 848 F.3d 1286, 1289 (10th Cir. 2017)("C.D."). First, "the defendant must show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing." C.D., 848 F.3d at 1289. The first prong is jurisdictional: if the defendant fails to make this initial showing, "the district court lacks jurisdiction over the defendant's motion and the motion must be dismissed."

---

[3]Despite the clear pronouncement in United States v. C.D., 848 F.3d 1286 (10th Cir. 2017)("C.D."), that "Section 3582(c)(2) plainly tells us a defendant must overcome three distinct hurdles before he may obtain a sentence reduction," 848 F.3d at 1289 (emphasis in original), the Tenth Circuit has applied both a three-prong and two-prong analysis in unpublished § 3582(c)(2) decisions following C.D., compare United States v. Toombs, 712 F. App'x 791, 794 (10th Cir. 2017)("We have recently explained that a defendant must 'overcome three distinct hurdles before he may obtain a sentence reduction [under § 3582(c)(2)].'" (quoting C.D., 848 F.3d at 1289)(alterations in United States v. Toombs)), with United States v. Cota-Medina, No. 21-2063, 2022 WL 971894, at *2 (10th Cir. March 31, 2022)("In determining whether to grant a sentence reduction under § 3582(c)(2), the court engages in 'a two-step process.'"). District courts in the Tenth Circuit, likewise, continue to apply both a three-step and two-step analysis. Compare United States v. Collazo, No. 09-CR-2621, 2020 WL 601943, at *2 (D.N.M. February 6, 2020)(Parker, J.)("The Tenth Circuit has explained that there are three prongs a defendant must meet to qualify for a sentence modification under 3582(c)(2)."), with United States v. Fabian-Hurtado, No. CR 21-0644, 2024 WL 706934, at *2 (D.N.M. February 21, 2024)(Johnson, C.J.)("When considering a retroactive Guidelines amendment, the Court engages in a two-step process.").

A two-pronged inquiry is appealing to a degree, because, under the three-prong analysis, "the second and third prongs overlap" to the extent that U.S.S.G. § 1B1.10 cmt. n.1(B), which courts must consider at the second step of the three-prong analysis, calls upon courts to evaluate the § 3553(a) factors that must be examined at the third prong. United States v. Collazo, 2020 WL 601943, at *3. As the Tenth Circuit formulates the two-step inquiry, however, the inquiry runs the risk of omitting evaluation of U.S.S.G. § 1B1.10 altogether, see United States v. Battle, 706 F.3d 1313, 1317 (10th Cir. 2013), and § 3582(c)(2) is clear that courts may reduce a defendant's sentence only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. 3582(c)(2). The Court will apply, therefore, the three-prong analysis, because: (i) the Tenth Circuit's most recent published pronouncement on the matter plainly calls upon the courts to use a three-part test, see C.D., 848 F.3d at 1289; (ii) a three-step inquiry mirrors the similar and settled three-step inquiry that courts undertake when evaluating a motion for compassionate release pursuant to § 3582(c)(2)'s sister statute, 18 U.S.C. § 3582(c)(1); and (iii) there is value in ensuring that the U.S.S.G. § 1B1.10 policy statement, and the important limitations to sentence reductions included therein, is given independent consideration.

- 11 -

C.D., 848 F.3d at 1289.[4]  See United States v. Munoz, 682 F. App'x 635, 636 (10th Cir. 2017)(remanding to the district court, because it "appear[s] that the district court denied the motion on the merits. It should have, instead, dismissed the matter for lack of jurisdiction").  Second, a defendant must show that "his request for a sentence reduction is consistent with the Commission's policy statements."  C.D., 848 F.3d at 1289.  U.S.S.G. § 1B1.10 is the policy statement concerning a sentence reduction resulting from an amended Guidelines.  See C.D., 848 F.3d at 1289.  The second requirement, unlike the first, is "not a jurisdictional prerequisite to § 3582(c)(2) relief."  C.D., 848 F.3d at 1289.  "Third, the defendant must convince the district court he is entitled to relief in light of the applicable sentencing factors found in 18 U.S.C. § 3553(a)."  C.D., 848 F.3d at 1289-90.

Congress and the Sentencing Commission have placed three primary restrictions on the relief available under § 3582(c)(2).  First, courts cannot reduce the term of imprisonment below

---

[4]Recently, the Tenth Circuit has called into question whether the § 3582(c)(2) analysis's first prong is jurisdictional.  See United States v. Warren, 22 F.4th 917, 926 n.6 (10th Cir. 2022)(acknowledging that, because 18 U.S.C. § 3582(c)(2) does not contain "an unequivocal statement from Congress" regarding its jurisdictional effect, "our precedent on this issue may need to be revisited," but declining to "seek en banc reconsideration of this question here").  As the Court has recognized, the Tenth Circuit recently has concluded that aspects of 18 U.S.C. § 3582(c)(1) are not jurisdictional.  See United States v. Haworth, No. CR 95-0491, 2023 WL 8112827, at *6 (D.N.M. November 22, 2023)(Browning, J.)(citing United States v. Hemmelgarn, 15 F.4th 1027, 1030-31 (10th Cir. 2021)(concluding that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional); United States v. Hald, 8 F.4th 932, 942 n.7 (10th Cir. 2021)(declining "to read a jurisdictional element in § 3582(c)(1)(A)'s 'extraordinary and compelling reasons' requirement when the statute itself provides no indication . . . to that effect" (quoting 18 U.S.C. § 3582(c)(1)(A))).  Nonetheless, because the Tenth Circuit has not revisited its holding that the Section 3582(c)(2) analysis's first step is jurisdictional, the Court must, as a district court, treat the first step as jurisdictional.  See United States v. Hald, 8 F.4th at 942 n.7 ("We acknowledge that this circuit has [held] that § 3582(c)(2)'s requirement that the defendant 'show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing' is a jurisdictional requirement that must be addressed first by the district court." (quoting C.D., 848 F.3d at 1289-90)).

time served.  See U.S.S.G. § 1B1.10 cmt. n.3.  Second, courts may not reduce a defendant's sentence below the amended Guidelines range, unless the defendant originally received a below-Guidelines sentence, because the United States made a motion to reflect the defendant's substantial assistance to authorities.  See U.S.S.G. § 1B1.10 (b)(2)(A)-(B).  In the substantial assistance case, a sentence "comparably less than the amended guideline range" may be appropriate.  U.S.S.G. § 1B1.10 (b)(2)(B).  See Dillon v. United States, 560 U.S. at 826-27 ("Only if the sentencing court originally imposed a term of imprisonment below the Guidelines range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to impose a term 'comparably' below the amended range.").[5] Third, a district court may not grant a sentence reduction if the defendant's original sentence was "based on" a statutory mandatory minimum sentence rather than a Guidelines range.  18 U.S.C. § 3582(c)(2).  Mandatory minimums foreclose 18 U.S.C. § 3582(c)(2) sentence reductions even for defendants who escape the mandatory minimum by providing substantial assistance to law enforcement, because their sentences are "'based on' on their mandatory minimums and their substantial assistance to the Government, not on the sentencing ranges that the Commission later lowered." Koons v. United States, 584 U.S. 700, 702 (2018)(quoting 18 U.S.C. § 3582(c)(2)). Consequently, for these defendants, a reduced sentence under 18 U.S.C. § 3582(c)(2) is not available.  See Koons v. United States, 584 U.S. at 702; United States v. Castillano, No. CR 06-1299 JB, 2008 WL 11451274 at *1 (D.N.M. Sept. 15, 2008)(Browning, J.)(denying a sentence

---

[5]This language from Dillon v. United States, 560 U.S. at 826-27, is more general than U.S.S.G. § 1B1.10(b)(2)(B)'s text.  Section 1B1.10(b)(2)(B) permits courts to reduce the defendant's term of imprisonment to a term that is less than the minimum of the amended guideline range only if the term of imprisonment imposed, pursuant to a government motion to reflect the defendant's substantial assistance to the authorities, was less than the term of imprisonment that the guideline range provides.  See U.S.S.G. § 1B1.10(b)(2)(B).

reduction because, in part, the retroactive amendments did not change the ability of the Court to impose a sentence below the mandatory minimum).

The Guidelines give specific guidance to courts contemplating sentence reductions.[6]  First, courts "shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced."  U.S.S.G. § 1B1.10(b)(1).  In making this decision, courts "shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected."  U.S.S.G. § 1B1.10(b)(1).  See Freeman v. United States, 564 U.S. 522, 531 (2011)(Kennedy, J., plurality opinion)("The binding policy statement governing § 3582(c)(2) motions places considerable limits on district-court discretion.  All Guidelines decisions from the original sentencing remain in place, save the sentencing range that was altered by retroactive amendment.").  In other words, "district courts cannot recalculate aspects of a sentence that are unaffected by a retroactively applicable amendment to the Guidelines."  United States v. Washington, 759 F.3d 1175, 1182 (10th Cir. 2014).  The Supreme Court has interpreted "all other guideline application decisions" broadly, holding that courts generally cannot revisit sentencing courts' calculations.  U.S.S.G. § 1B1.10(b)(1).  In United States v. Dillon, the defendant argues that the sentencing court's decision to treat the Guidelines as mandatory violates his

---

[6]Sentence reduction hearings under this statute are not full resentencing proceedings.  See U.S.S.G. § 1B1.10(a)(3) ("[P]roceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full re-sentencing of the defendant."); Dillon v. United States, 560 U.S. at 83 ("18 U.S.C.S. § 3582(c)(2) does not authorize a resentencing.  Instead, it permits a sentence reduction within the narrow bounds established by the Commission.").

Constitutional rights under United States v. Booker, 543 U.S. 220.  See United States v. Dillon, 560 U.S. at 831.  The Supreme Court rejects the defendant's attempt to "recalculate" his sentence and correct the error, explaining that this aspect of his sentence is "outside the scope of the proceeding authorized by § 3582(c)(2)."  United States v. Dillon, 560 U.S. at 831.

      **a.**        **Amendment 821.**

The Sentencing Commission has a responsibility periodically to "review and revise" its Guidelines.  28 U.S.C. § 994(o).  It may choose to reduce the term of imprisonment "recommended in the guidelines applicable to a particular offense or category of offenses," but it must "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."  28 U.S.C. § 994(u).  Congress has directed the Sentencing Commission to formulate its Guidelines "to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons, as determined by the Commission."  28 U.S.C. § 994(g).

Before the Sentencing Commission promulgated Amendment 821, U.S.S.G. § 4A1.1(d) added 2 points to defendants' criminal history scores if they "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."  United States Sentencing Commission, Guidelines Manual, § 4A1.1(d) (Nov. 2021).  A defendant's criminal history score determines in which of six criminal history categories the defendant will fall.  See U.S.S.G. Ch. 5, Pt. A.  Generally, "more status points result in a higher criminal history category and a longer range of imprisonment under the guidelines."  United States v. Bailey, No. 19-CR-142, 2024 WL 453619, at *2 (E.D. Pa. February 6, 2024)(Kenney, J.).

Amendment 821, which came into effect in November of 2023, see Supp. to App. C at 244, reduces the number of criminal history points a defendant receives for committing the charged offense under a criminal justice sentence.  See Supp. to App. C. at 234; United States Sentencing Commission, Guidelines Manual, § 4A1.1(e) (Nov. 2023).   The Amendment, which has retroactive effect and thus may be applied to closed cases, see U.S.S.G. § 1B1.10(a)(1), (d), revises how status points are calculated such that defendants with 7 or more criminal history points now receive 1, instead of 2 status points if they committed their offense while under a criminal justice sentence.  See U.S.S.G. § 4A1.1(e); Supp. to App. C at 235.  This means that defendants with six or fewer criminal history points now receive zero status points if they committed their offense while under a criminal justice sentence.  See U.S.S.G. § 4A1.1(e); United States v. Bailey, 2024 WL 453619, at *2.  Additionally, Amendment 821 moves the language directing courts to apply the status-point increase from § 4A1.1(d) to § 4A1.1(e).  See Supp. to App. C at 235.  The result of Amendment 821's status-point reduction is that "approximately 11,500 [federal defendants] are eligible to seek a reduction in their current sentence."  Materials Relating to the 2023 Criminal History Amendment, U.S. Sent'g Comm'n (last visited May 8, 2024), https://www.ussc.gov/policymaking/materials-relating-2023-criminal-history-amendment.

As justification for Amendment 821, the Sentencing Commission explains that, while "an offender's criminal history calculation under the guidelines is strongly associated with the likelihood of future recidivism by the defendant, . . . status points add little to the overall predictive value associated with the criminal history score."  Supp. to App. C at 241 (citing U.S. Sentencing Commission, Revisiting Status Points (2022), https://www.ussc.gov/research/research-

reports/revisiting-status-points).[7]    According to the Sentencing Commission, "recent research suggests that 'status points' improve the predictive value of the criminal history score less than the

_____

[7]While the Court is unable to do the research to question the Sentencing Commission's decision that status points add little to predict future criminal activity, the Court thinks that there are other reasons that status points may be valuable. Congress evidently thinks that it is important for the federal court to supervise defendants coming out of prison; but supervision of recently incarcerated individuals does not necessarily have to fall under the purview of the judiciary. Federal judicial supervision of defendants is a relatively novel practice, which only began in 1984 with the passage of the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1987 (1984). By contrast, in New Mexico, State probation officers are in the corrections department, and not in the State judiciary. See Probation and Parole, New Mexico Corrections Department, www.cd.nm.gov/divisions/probation-and-parole. The Court does not think the federal courts should be supervising their defendants, as supervising defendants is not a core judicial function. Nevertheless, Congress wants the federal courts to perform this supervision, and the Court is obligated faithfully to carry out this task -- even if it is not its favorite judicial obligation.

Supervised release is a major part of the Court's job. In a border State with twenty-three Indian reservations and because the Court has been on the bench for twenty-one years, the Court has sentenced approximately 2800 defendants; the number of people on supervised release grows with years of service. The District of New Mexico ranks fifth among the ninety-four districts in the number of filed criminal cases. See U.S. District Courts - Criminal Defendants Filed, by Offense and District, Table D-3, United States Courts (2024), https://www.uscourts.gov/statistics/table/d-3/statistical-tables-federal-judiciary/2024/06/30. By way of example, the Court held seventy-three revocation hearings in 2023. Hence, the burden of supervised release on the Court is great and unwelcome.

The Court's view notwithstanding, once Congress has given the Court the task of supervising defendants coming out of prison, it must do the best to perform this responsibility faithfully. While status points may not predict future criminal activity, they send a signal that the federal court takes supervised release seriously. By amending the Guidelines to add Amendment 821, the Sentencing Commission has just weakened that signal in two ways. First, the Sentencing Commission has told defendants that it is lowering the points they will receive when they violate supervised release. Second, the Sentencing Commission tells everyone in prison that the lowering is retroactive, broadcasting to everyone in prison that the Sentencing Commission is lowering the points of supervised release.

The Court went to Seattle last year to the United States Sentencing Commission Conference and urged the Sentencing Commission not to make Amendment 821 retroactive. Even if the Sentencing Commission going forward does not want to assign status points, there is no sound reason to make this change retroactive. The Court works very hard to sentence its approximately 130 defendants each year, and then the Sentencing Commission tells the Court it must reevaluate these sentences. Nothing in justice and fairness requires this additional work; there is nothing "wrong" with the first sentence. A Sentencing Commission's ideological desire to decrease the prison population does not alleviate the burden that the process places on the courts

original Commission may have expected," and, "[a]ccordingly, the Commission determined that

it was appropriate to address several concerns regarding the scope and impact of status points."

---

and the signal that it sends to defendants that the system does not take supervised release as
seriously as it used to do.

Finally, in the Court's view, some of the Sentencing Commission's observations do not
reflect reality.  For example, the Sentencing Commission observes that defendants implicated by
§ 4A1.1(a) likely will already face a separate "consecutive punishment imposed upon revocations
of supervised release."  Supp. to App. C at 241.  While the Court cannot say what every judge
does, the Court rarely, if ever, makes the sentence for revocation fully consecutive.  The Court
works hard to come up with a reasonable sentence for the new crime.  To start slapping another
few months and running it all consecutively sometimes undoes all the work on the new sentence.
Typically, the Court gives the defendant a Guideline sentence for the revocation violation, but runs
the entire sentence concurrently, except 1 month, which it runs consecutively.  This practice does
not undo all of the hard work on the new sentence, but gives the defendant a month for violating
supervised release.  This month sends a signal to the defendant that the Court takes supervision
seriously.  The Court orally describes to the defendant that this one month is specifically for
violating supervised release; the defendant should remember that he or she is serving that last
month because he or she violated supervised release.  The Court talks to defendants about the
importance of supervised release and that, if he or she violates it, all of the Court's, as well as the
parties', hard work to create a fair sentence will go out the window.

The current United States Attorney and his Assistants' positions in this case, and many
others before the Court, are proof that the Sentencing Commission's policy changes are
wrongheaded.  The current United States Attorney and his Assistants believe that the Court should
not reduce Hurtado's sentence.  See Sentence Reduction Response at 1.  The Court is sympathetic
to the line attorneys' concern with lowering the guideline range for these sentences, and the Court
encourages the line attorneys to direct their arguments to Main DOJ and to Attorney General
Merrick Garland, who helped fill the spots that President Trump left open.  See Acting Chair Judge
Charles Breyer, Incoming Chair Judge Carlton W. Reeves Applaud Senate Confirmation of New
Commissioners, United States Sentencing Commission (August 5, 2022),
https://www.ussc.gov/about/news/press-releases/august-5-2022.

As much as the Court disagrees with what the Sentencing Commission is doing with
Amendment 821, particularly in its decision to make Amendment 821 retroactive, the Court also
believes that elections have consequences.  President Trump, who passed the First Step Act, largely
to attract African American votes, see Greg Miller, Allegations of Racism Have Marked Trump's
Presidency and Become Key Issue as Election Nears, Wash. Post (July 2, 2020)("[F]ormer
officials said that Trump only agreed to support the measure when told it might boost his low poll
numbers with Black voters."), did not fill the vacancies on the Sentencing Commission to
implement his Act.  President Biden filled these spots.  The Court will not let its own thoughts
about policy block its duty to implement the Sentencing Commission's decision on policy.  The
Court will attempt to apply the new rules as faithfully as it possibly can.

Supp. to App. C at 241.[8]  First, the Sentencing Commission observes that a defendant impacted by § 4A1.1(e) likely will already face a separate "consecutive punishment imposed upon revocations of supervised release."  Supp. to App. C at 241.  Second, the Sentencing Commission observes that "it is also possible that an offender's criminal history score would be independently increased as the result of additional time imposed as the result of a revocation of probation or supervised release for the offense that also results in the addition of status points."  Supp. to App. C at 241.[9]

---

[8]The Court does not understand why the current Sentencing Commission is so focused on linking status points to recidivism.  Recidivism is not an express § 3553(a) factor.  Deterrence is an express factor, and it is a huge one.  The whole point of incarceration or revocation is to try to get the defendant to just do what the court and the probation officer tell him to do.  The Commission's lowering of status points and making the reduction retroactive undercuts the district courts' already difficult task, and sends the wrong signal to defendants who are about to go on supervised release.  The public may think, like the Court, that a "just sentence" and one that "promotes respect for the law" is one that punishes a defendant a little more if the defendant is out committing crimes while he is out of prison on parole or supervised release.  It is obvious those defendants do not respect the judicial system.  Extra protection of the public is needed with these people.  The district court needs all the help that it can get stressing on defendants the importance of obeying the rules on supervised release.

The Court believes the Sentencing Commission's myopic focus on a factor not mentioned in § 3553(a) undercuts many of the express factors in § 3553(a).  Recidivism should not be the only consideration of status points.  The Sentencing Commission's focus on recidivism is not helpful for district courts to do their Congressionally-imposed job of sentencing people who commit crimes out of prison.  There are other factors that the Court considers when it sentences a defendant: the crime's seriousness, a just sentence, promoting respect of the law, deterrence (both specific and general), avoiding unwarranted sentencing disparities among defendants with similar history and background, and provide specific release education, training, with care to help the defendant with the problems that continue to bring him or her before the criminal justice system.  Further, status points reflect the public's view that it is unjust for a defendant to commit a federal crime, get out of prison, be put on supervised release, and then commit another federal crime.

[9]The Court has struggled some to understand the Sentencing Commission's reasoning.  It is helpful to provide an example of the scenario the Sentencing Commission is using to dispense with 1 additional status point.  For example, the USPO calculates the Criminal History Category in the PSR for Defendant A convicted of federal drug trafficking.  Defendant A has a prior criminal history entry for an offense he committed in 2015 ("2015 Offense").  A State court imposed State probation for the 2015 Offense, which typically results in adding 1 point to the Defendant A's criminal history score, i.e., a "1 pointer," for purposes of federal sentencing.  U.S.S.G. § 4A1.1(c).

For the purposes of this example, the 2015 Offense violates State law and the sentence of probation is in State court, but the 2015 Offense can be in either State or federal court.  Defendant A then violates his State probation in 2017 when he commits the federal offense -- federal drug trafficking -- which results in the federal criminal case for which the USPO is calculating his Criminal History Category.  The State court then revokes his State court probation and resentences him to 15 months imprisonment in State prison.  For purposes of his federal court sentencing for his federal drug trafficking conviction, the revocation of probation and the resentence to 15 months imprisonment both add criminal history points under U.S.S.G. § 4A1.2k ("In the case of a prior revocation of probation [. . .] add the original term of imprisonment to any term of imprisonment imposed upon revocation.  The resulting total is used to compute the criminal history points for § 4A1.1(a), (b) or (c), as applicable."), and U.S.S.G. § 4A1.1(a)("Add 3 points for each prior sentence of imprisonment exceeding one year and one month.").  Defendant A's criminal history score is now a "3 pointer" under U.S.S.G. § 4A1.2k and U.S.S.G. § 4A1.1(a), resulting in a Criminal History Category of II.  See U.S.S.G. § 5A (classifying 2 or 3 criminal history points as Criminal History Category II).  If the Court, pursuant to the pre-Amendment 821 status point rule, had to add 2 status points because Defendant A committed the federal drug trafficking offense while under a criminal justice sentence, that would add 2 points to the already "3 pointer" because Defendant A committed federal drug trafficking while on probation for his 2015 Offense.  Defendant A would then have a total of 5 criminal history points, resulting in a Criminal History Category of III.  See U.S.S.G. § 5A (classifying 4, 5, or 6 criminal history points as Criminal History Category III).

One also can imagine an identical outcome for a Defendant B who is identical except that he violates probation for the 2015 Offense in a way that falls short of committing a crime.  For example, the USPO calculates the Criminal History Category in the PSR for Defendant B based on a federal drug trafficking conviction, and Defendant B also has a prior 2015 Offense.  Defendant B violated his State probation in 2017 without committing a new crime -- such as making a technical violation -- but for which he is still resentenced to 15 months imprisonment in State prison and an additional term of probation.  While back on probation, Defendant B commits the federal drug trafficking offense for which the USPO is calculating his Criminal History Category.  Defendant B's criminal history points also become a "3 pointer" under U.S.S.G. § 4A1.2k, resulting in a Criminal History Category of II under U.S.S.G. § 5A.  Pursuant to the pre-Amendment 821 status point rule, the Court would also add 2 status points because Defendant B committed the federal drug trafficking offense while back on probation.  Defendant B would then have a total of 5 criminal history points, resulting in a Criminal History Category of III.  See U.S.S.G. § 5A.  In a third example, Defendant C commits a first federal crime and only is placed on probation, and while on probation, commits a second federal crime.  If the Court first revokes probation and resentences to a term of imprisonment, and then second sentences Defendant C for the second federal crime, then first crime and its resulting revocation and resentence could turn Defendant C's criminal history points into a "2 pointer" or "3 pointer" in the PSR for Defendant C's second federal crime sentencing.  Once again, pursuant to pre-Amendment 821 status point rules, the Court would add 2 status points because Defendant C committed the second federal crime while serving a criminal justice sentence for the first federal crime.  Defendant C would then have a total of 5 criminal history points, resulting in a Criminal History Category of III.

- 20 -

## LAW REGARDING COMPASSIONATE RELEASE

Federal courts are generally forbidden from modifying a term of imprisonment after it has been imposed.  See Freeman v. United States, 564 U.S. 522, 526 (2011).  Nevertheless, this "rule of finality is subject to a few narrow exceptions," including when a defendant moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).  United States v. Maumau, 993 F.3d 821, 830 (10th Cir. 2021)("Maumau").  Section 3582(c)(1)(A), commonly known as the compassionate release statute, allows a defendant to move the court for early release from prison provided certain conditions are met.[10]  First, § 3582(c)(1)(A) "requires exhaustion before a court may consider a

_____

In any of these pre-Amendment 821 situations, Defendants A, B, and C's shared Criminal History Category of III -- resulting from violations of supervised release or probation that lead to resentences -- is somewhat unfairly the same Criminal History Category as a defendant who with two "3 point" priors (meaning two prior sentences of imprisonment exceeding a year and one month), or three "2 point" priors (meaning three prior sentences of imprisonment of at least sixty days).

The Court is skeptical that these paper reasons justify getting rid of status points in the real world.  First, the Court thinks the Sentencing Commission is thinking up scenarios that do not happen often.  As to Defendant A, the Court cannot say what happens in other Districts, but the Court's experience is that here, if a State defendant violates his or her State conditions of supervised release by committing a federal crime, the State lets the federal court take care of that defendant via a federal sentence; Defendant A's State conviction is thus likely to stay a "1 pointer."  Defendant B's situation seems even less likely; the Court does not see the State resentencing to 15 months for a violation that does not contain a new crime, usually such as a minor, technical condition violation.  Defendant C -- the frequent flyer and repeat customer -- seems the least sympathetic and poor poster boy of deleting status points.  Defendants who commit their second federal offense while they are under federal supervision are not in a good position to complain about status points.  Moreover, the Court's general practice is to schedule the resentencing and the revocation at the same time, but first schedule the second federal crime's sentencing before the resentencing and revocation.  There, the first federal case will remain a "1 pointer" in the second case's PSR, but only perhaps becomes anything more in a third federal case.

[10]Before the passage of the First Step Act of 2018, Pub. L. No. 115-39132 Stat 5194 (December 21, 2018)("First Step Act"), 18 U.S.C. § 3582 permitted only the Bureau of Prisons Director to ask the court for a defendant's compassionate release.  E.g., United States v. Smartt, 129 F.3d 539, 541 (10th Cir. 1997)(explaining that a prisoner was not eligible for compassionate

motion for compassionate release." United States v. Hemmelgarn, 15 F.4th 1027, 1030 (10th Cir.

2021). A defendant satisfies this exhaustion requirement if: (i) "the defendant has fully exhausted

all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

defendant's behalf"; or (ii) thirty days have lapsed "from the receipt of such a request by the

warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).[11]

If a defendant satisfies the exhaustion requirement, district courts follow a three-part test

to evaluate a defendant's compassionate release motion. See United States v. McGee, 992 F.3d

1035, 1042-43 (10th Cir. 2021)("McGee")(citing United States v. Jones, 980 F.3d 1098, 1107 (6th

Cir. 2020)); United States v. Haworth, No. CR 95-0491, 2023 WL 8112827, at *10-16 (D.N.M.

November 22, 2023)(Browning, J.)(assessing a compassionate release motion under McGee's

---

release absent motion from Bureau of Prisons Director). The First Step Act, however, amended §
3582 to enable defendants to petition the court for compassionate release after exhausting
administrative remedies. See United States v. Maumau, 993 F.3d 821, 830 (10th Cir.
2021)("Maumau")(discussing the First Step Act's changes to § 3582).

[11]In the United States Court of Appeals for the Tenth Circuit, this exhaustion requirement
is a mandatory claim-processing rule, meaning the requirement is not "jurisdictional," and
"challenges based on the failure to exhaust 'can be waived or forfeited.'" United States v.
Hemmelgarn, 15 F.4th 1027, 1030-31 (10th Cir. 2021)("[M]andatory claim-processing rules do
not implicate the courts' adjudicatory authority . . . ."). See United States v. Nash, No. 19-40022,
2022 WL 2072733, at *1 (D. Kan. June 9, 2022)(Crabtree, J.)("[T]his exhaustion requirement is a
claim-processing rule that the government may waive or forfeit."). For example, in United States
v. Hemmelgarn, the Tenth Circuit considered the defendant's motion for compassionate release,
even though the defendant "failed to provide proof that he exhausted his administrative remedies,"
because "the government did not argue exhaustion on appeal." 15 F.4th at 1031. Before United
States v. Hemmelgarn, the Tenth Circuit suggested that the exhaustion requirement is jurisdictional
and, therefore, not subject to waiver. See, e.g., United States v. Johnson, 849 F. App'x 750, 753
(10th Cir. 2021)("In this circuit, however, § 3582(c)(1)(A)'s exhaustion requirement is mandatory,
rather than judicially waivable."); United States v. Gonzales, 547 F. Supp. 3d 1083, 1109 (D.N.M.
2021)(Browning J.)("[T]he Tenth Circuit has continued to impose the exhaustion requirement as
mandatory and not judicially waivable despite the COVID-19 pandemic."), aff'd, No. 21-2060,
2021 WL 5985347 (10th Cir. Dec. 17, 2021); United States v. Heath, No. CR-13-102, 2020 WL
1957916, at *2 (W.D. Okla. April 23, 2020)(Palk, J.)(collecting cases).

three-part test). First, the court must determine whether extraordinary and compelling reasons warrant a sentence reduction. See McGee, 992 F.3d at 1042; 18 U.S.C. § 3582(c)(1)(A)(i). Second, the court must determine whether such a reduction is consistent with applicable policy statements that the Sentencing Commission has issued. See McGee, 992 F.3d at 1042. Third, the court must consider whether a reduction aligns with the applicable 18 U.S.C. § 3553(a) factors. See McGee, 992 F.3d at 1042. Defendants must satisfy all three requirements, and, accordingly, district courts may deny a compassionate release motion on any of the three steps without addressing the others. See United States v. Hald, 8 F.4th 932, 942-43 (10th Cir. 2021)("If the most convenient way for the district court to dispose of a motion for compassionate release is to reject it for failure to satisfy one of the steps, we see no benefit in requiring it to make the useless gesture of determining whether one of the other steps is satisfied."), cert. denied, 142 S. Ct. 2742 (2022); McGee, 992 F.3d at 1042. Conversely, courts must address all three steps when granting a motion for compassionate release. See Maumau, 993 F.3d at 831 n.4. See United States v. Thompson, No. CR 12-3013 JB/CG, 2024 WL 1557126 at *16 (D.N.M. April 10, 2024)(Browning, J.)(denying the defendant's motion for compassionate release because: (i) the defendant's medical conditions are not "extraordinary and compelling" reasons to reduce his sentence; (ii) the sentence reduction is inconsistent with applicable policy statements; and (iii) the reduction does not align with the 18 U.S.C. § 3553(a) factors given the seriousness of his offense and his extensive criminal history); United States v. Burke, No. CR 21-0655 JB, 2024 WL 3829969 at *20 (D.N.M. Aug. 15, 2024)(Browning, J.)(denying the defendant's motion for compassionate release because even though defendant's medical conditions are "extraordinary and compelling reasons" to reduce his sentence and the requested sentence reduction is consistent with the U.S.S.G. § 1B1.13 policy statement, the sentence does not meet the factors in 18 U.S.C. § 3553(a) because of the seriousness

of the offense and criminal history).

     **a.    Extraordinary and Compelling Reasons.**

At the first step of the three-part compassionate release test, courts must determine whether "extraordinary and compelling reasons warrant" a sentence reduction.    18 U.S.C. § 3582(c)(1)(A)(i).  See McGee, 992 F.3d at 1042.  District courts "have the authority to determine for themselves what constitutes extraordinary and compelling reasons."  United States v. Hald, 8 F.4th at 938 n.4.  See McGee, 992 F.3d at 1044 ("Congress intended to afford district courts with discretion, in carrying out the first step of the statutory test in § 3582(c)(1)(A)(i), to independently determine the existence of extraordinary and compelling reasons . . . .").  This discretion, however, "is bounded by the requirement under step two of the statutory test that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission."  Maumau, 993 F.3d at 832.  The Court has "deriv[ed] its test for extraordinary and compelling circumstances from the words' dictionary definitions."  United States v. Gonzales, 547 F. Supp. 3d 1083, 1124-25 (D.N.M. 2021)(Browning, J.), aff'd, No. 21-2060, 2021 WL 5985347 (10th Cir. December 17, 2021).  Black's Law Dictionary defines extraordinary as "[b]eyond what is usual, customary, regular, or common," Extraordinary, Black's Law Dictionary (11th ed. 2019), and the New Oxford American Dictionary defines compelling as "evoking interest, attention, or admiration in a powerfully irresistible way; not able to be refuted, inspiring conviction; not able to be resisted, overwhelming," Compelling, New Oxford American Dictionary (3d ed. 2010).  See United States v. Haworth, 2023 WL 8112827, at *11 ("Haworth has not demonstrated that the risks posed by COVID-19 extend '[b]eyond what is usual, customary, regular, or common . . . .'" (quoting Extraordinary, Black's Law Dictionary (11th ed. 2019)).  Accord United States v. Castano-Vasquez, 266 F.3d 228, 233 (3d Cir. 2001).

Courts commonly consider whether a defendant's medical condition constitutes extraordinary and compelling reasons.   In determining whether medical issues warrant a defendant's release, courts evaluate: (i) the severity of the defendant's medical conditions, including whether a condition is terminal, see United States v. Bauer, 554 F. Supp. 3d 1109, 1112-13 (D.N.M. 2021)(Johnson, C.J.)(concluding that the defendant's numerous, serious, and irreparable debilitations demonstrated extraordinary and compelling reasons to reduce his sentence, even though the defendant had an extensive criminal history); United States v. Lopez, 487 F. Supp. 3d 1156, 1158 (D.N.M. 2020)(Vázquez, J.)(recognizing that "where the defendant is suffering from a terminal illness," compassionate release may be warranted); but see United States v. Chambliss, 948 F.3d 691, 693-94 (5th Cir. 2020)(denying a request for compassionate release where the defendant had a terminal disease, because the defendant had committed a serious drug crime and previously had committed aggravated robbery); (ii) the defendant's age, because older inmates are more likely to have serious diseases, are more likely to have served a significant portion of his or her sentence, and are less likely to be a danger to society if released, see United States v. Johns, No. CR 91-392, 2019 WL 2646663, at *3 (D. Ariz. June 27, 2019)(Jorgenson, J.)(granting release to an eighty-one-year-old defendant who served almost twenty-three years of his sentence, could no longer go to the cafeteria to eat, had a fading memory, and was the oldest inmate at the facility); but see United States v. Slater, 547 F. Supp. 3d 58, 87 (D. Me. 2021)(Woodcock, J.)(denying compassionate release despite that the defendant was elderly and suffered from numerous health conditions, because the defendant was not entirely incapacitated and still could cause serious harm with a gun); and (iii) whether the defendant is receiving adequate care while incarcerated, see United States v. Beck, 425 F. Supp. 3d 573, 581 (M.D. N.C. 2019)(Eagles, J.)(granting a motion for compassionate release in part, because of the Bureau of

Prisons' "abysmal health care"); United States v. Eccleston, 543 F. Supp. 3d 1092, 1140 (D.N.M. 2021)(Browning, J.)("S. Eccleston's medical difficulties do not present extraordinary and compelling circumstances, because the record indicates that the [Bureau of Prisons] manages effectively his chronic conditions . . . .").[12]

---

[12]Generally speaking, it is very difficult for the Court to decide: (i) whether the Bureau of Prisons' medical care has been poor; and (ii) whether that poor care has compromised the defendant's prospects of survival in a compassionate release case. Normally, poor medical care in prison is addressed in civil cases and not in criminal cases. See Ramos v. Martinez, No. CIV 17-0120, 2019 WL 7049620, at *3 (D.N.M. Dec. 23, 2019)(Browning, J.)("Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain that the Eighth Amendment proscribes."). Typically, the courts do not deal with medical care in the criminal context, but wait for a Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)("Bivens") action under the Eighth Amendment. See, e.g., Carlson v. Greene, 446 U.S. 14, 20 (1980); Estelle v. Gamble, 429 U.S. 97, 104 (1976); Richardson v. Daniels, 557 F. App'x 725, 728 (10th Cir. 2014)(affirming dismissal of a prisoner's Bivens claim which alleged that the defendants "violated his Eighth Amendment rights in connection with their response to a seizure he had," where "corrections officers responded to his seizure, he received prompt medical attention and has been given medicine to treat seizures"). Cf. Moya v. San Juan Cnty. Adult Det. Ctr., No. CIV 20-0431, 2022 WL 16924001, at *3-5 (D.N.M. November 14, 2022)(Browning, J.)(recognizing that § 1983 is the proper avenue for pre-trial detainees to vindicate their medical claims).

The efficient solution to poor medical care in a prison setting is neither to redo a sentence nor to release the defendant. It seems strange that federal courts do not deal with medical protection in criminal cases unless detention center circumstances jeopardize the defendant's right to effective assistance of counsel, see United States v. Folse, Nos. CR 15-2485 JB, CR 15-3883 JB, 2016 WL 3996386 at *16-17 (D.N.M. June 15, 2016)(Browning, J.)(noting that the "primary exception" to the requirement that a prisoner must challenge conditions of confinement through a civil action is when a condition of confinement interferes with a pretrial detainee's access to counsel in a criminal case) but, once a defendant goes to prison, courts may use poor medical care to release a defendant, see, e.g., United States v. Beck, 425 F. Supp. 3d 573, 586 (M.D.N.C. 2019)(Eagles, J.)(granting a prisoner's compassionate release motion "given her breast cancer and the poor treatment she has received at [Bureau of Prisons]"). Instead, Bivens actions are a more suitable remedy for problems with prison medical care than are compassionate release motions. Unless the parties are willing to present the court with a robust evidentiary record, the court is left with the uneasy feeling that it is dealing with a pro se prisoner's complaint that is often seen in Bivens actions -- skeptical that the situation is as bad as the pro se prisoner says it is.

Moreover, it is difficult for a district court to compare medical care. Often, a defendant, when released, has no medical insurance, and his or her care is problematic. It is not clear how the court should compare the care in a medical Bureau of Prisons Facility with care on the outside,

Since COVID-19's emergence, the Court has considered whether the risks that the virus poses constitute extraordinary and compelling reasons.  First, general concerns about potential exposure to COVID-19 alone do not demonstrate an extraordinary and compelling reason for a reduced sentence.  See United States v. Wood, No. CR 14-2446, 2020 WL 4016058, at *2  (D.N.M. July 16, 2020)(Browning, J.)("'[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.'" (quoting United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020))).  Rather, a defendant must demonstrate that his or her medical conditions make acquiring COVID-19 more likely or increase the risk that the defendant will experience a severe case of COVID-19 upon contraction of the virus.  See United States v. Hemmelgarn, 15 F.4th at 1031 ("The district court's finding that these medical conditions identified by Hemmelgarn do not place him at a risk of severe illness from COVID-19 is not clearly erroneous."); United States v. Baca, No. CR 16-1613, 2020 WL

---

particularly where the court must speculate regarding the quality of medical a defendant might receive once released.  Further, it is very difficult for a district court to know, without the discovery and experts that it has in a civil case, whether the defendant is the problem or whether the facility is the problem.  See Nicholson v. Evangelical Lutheran Good Samaritan Soc'y, Inc., No. CIV 16-0164, 2017 WL 3127799, at *29 (D.N.M. July 21, 2017)(Browning, J.)(stating that, in a medical malpractice case, the plaintiff must "use expert medical testimony," because, where "'the cause and effect of a physical condition lies in a field of knowledge in which only a medical expert can give a competent opinion,' a plaintiff must introduce expert medical testimony that establishes causation")(quoting Woods v. Brumlop, 1962-NMSC-133, ¶ 15, 71 N.M. 221, 225, 377 P.2d 520, 523, and citing O'Banion v. Owens Corning Fiberglass Corp., 968 F.2d 1011, 1013 (10th Cir. 1992)(affirming an order that excluded evidence of cancer where plaintiff presented no evidence "from a qualified medical expert stating that there is a reasonable medical probability the Plaintiff will have a cancer condition from his asbestos related disease")).

Accordingly, courts should proceed with caution when they encounter the thin medical record that often exists in criminal cases.  Moreover, presenting courts with voluminous medical records is not very helpful where the litigation lacks expert testimony and a true adversarial process, as is often the case in compassionate release motions.  On this basis, the court cannot evaluate meaningfully whether the defendant properly has requested medical assistance, whether the facility improperly has denied the requested care, and how severe the defendant's health condition is.  See United States v. Gonzales, 547 F. Supp. 3d at 1118.

5369078, at *15 (D.N.M. September 8, 2020)(Browning, J.)("[C]ases in which COVID-19 is a factor for compassionate release require more than speculative complications.").

In determining whether the risk of severe COVID-19 from a medical condition constitutes an extraordinary and compelling reason, the United States, in some cases, "concede[s] that having a CDC-identified COVID-19 risk factor satisfies the extraordinary and compelling prong of § 3582(c)(1)(A)(i)."  United States v. Loughry, No. CR 08-0132, 2020 WL 7319077, at *3 (S.D. Ind. Dec. 10, 2020)(Barker, J.)(listing cases).  See United States v. Gonzales, 547 F. Supp. 3d at 1100 ("The United States . . . admits that Gonzales' case satisfies the extraordinary and compelling circumstances requirement, [because] Gonzales' asthma and severe obesity 'are clearly identified as risk factors by the CDC.'" (quoting the record)).  The Court has concluded, however, that the defendant's suffering from a medical condition that the CDC has identified as a COVID-19 risk factor (a "listed condition") does not compel the conclusion that the defendant has demonstrated extraordinary and compelling circumstances.  See United States v. Gonzales, 547 F. Supp. 3d at 1100 (disagreeing with the United States' "blanket concession" that, "where an individual is incarcerated and has a condition that the CDC asserts creates a heightened risk of COVID-19 complications . . . , that person presents extraordinary and compelling circumstances," and concluding that "the Court must[] evaluate each case on an individualized basis").  The Tenth Circuit agrees that, while district courts may rely on CDC guidance in determining whether extraordinary and compelling reasons exist, they are not bound to conclude that such conditions exist by the mere fact that an inmate's medical condition is a listed condition:

> Mr. Mendoza-Contreras appears to contend that district courts lack discretion to deny compassionate release to any inmate who has an underlying medical condition that increases his risk of severe illness from COVID-19.  We reject that proposition as inconsistent with the district court's broad discretion to determine what constitutes extraordinary and compelling reasons under §

3582(c)(1)(A)(i).

United States v. Mendoza-Contreras, No. 22-5057, 2023 WL 2706808, at *3 (10th Cir. March 30, 2023).  In addition, "access to vaccination . . . weigh[s] against a finding of extraordinary and compelling reasons," United States v. Hald, 8 F.4th 932 at 939 n.5; see United States v. Jefferson, No. 22-8067, 2023 WL 5572550,  at *2 (10th Cir. August 29, 2023)(collecting cases), and numerous courts have held "that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances," United States v. Baeza-Vargas, 2021 WL 1250349, at *2-3 (D. Ariz. April 5, 2021)(Teilborg, J.).

In addition to a defendant's medical concern, courts have cited a change in sentencing, such that the defendant would be given a significantly lower sentence now compared to the original sentence, as an extraordinary and compelling circumstance.  See Maumau, 993 F.3d at 837 (agreeing with the district court that the length of the defendant's sentence, and the fact that the defendant would not receive the same sentence if the crime occurred today, supports a finding of extraordinary and compelling reasons); United States v. Eccleston, 543 F. Supp. 3d at 1144-45 (identifying the defendant's "reasonable, but incorrect, belief when he signed his State and federal Plea Agreements that his state and federal sentences would run concurrently" as one factor among many that "persuades the Court to find extraordinary and compelling circumstances").  Courts nevertheless must be cautious when considering circumstances surrounding a defendant's sentence as part of the extraordinary and compelling analysis to accord due respect to Congress' province to fix criminal penalties:

> The length of the sentence cannot be an extraordinary and compelling reason to grant compassionate release because this would infringe on the legislature's province to fix penalties.  This is especially true when mandatory minimums are involved.  In essence, Andrews asks the Court to reevaluate his sentence and fashion its own brand of justice.  But to do so in this manner would

intrude on legislative prerogatives.

United States v. Andrews, 480 F. Supp. 3d 669, 678-79 (E.D. Pa. 2020)(Robreno, J.), aff'd, 12 F.4th 255 (3d Cir. 2021). The Court has concluded, for example, that "prospective statutory changes generally do not result in extraordinary and compelling circumstances warranting compassionate release." United States v. Eccleston, 543 F. Supp. 3d at 1141-42 (citing Van Skiver v. United States, 952 F.2d 1241, 1245 (10th Cir. 1991)). Furthermore, some courts have held that care needs for the defendant's family members also may support the defendant's request for compassionate release. See United States v. Washburn, No. CR 10-2456 DHU, 2023 WL 3853343, at *4 (D.N.M. June 6, 2023)(Urias, J.)("Defendant has established that the circumstances involving his mother's caregiving contributes to a finding of extraordinary and compelling reasons that warrant his compassionate release because he is the only available caregiver for her."); Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28257 (May 3, 2023)("[A] parent has been the family member most often identified as needing care by courts granting sentence reductions."). But see United States v. Haworth, 2023 WL 8112827, at *10 ("Haworth has not demonstrated that his mother's medical condition is sufficiently serious to warrant his release to assist in her care."). Finally, Congress has expressed that "'[r]ehabilitation of the defendant alone . . . shall not be considered an extraordinary and compelling reason.'" McGee, 992 F.3d at 1044 (quoting 28 U.S.C. § 994(t)).

b.    The U.S.S.G. § 1B1.13 Policy Statement and the 2023 Amendments.

At the second step of the three-part test for considering motions for compassionate release, courts consider whether a "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). See McGee, 992 F.3d at 1042. Congress has directed the Sentencing Commission to promulgate "general policy statements" regarding the

appropriate use of the sentence modification provisions set forth in § 3582(c). 28 U.S.C. § 994(a)(2)(C). Congress has called upon the Sentencing Commission, in promulgating these general policy statements, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Applicable policy statements do not define "exclusively" what courts may consider extraordinary and compelling reasons for a sentence reduction; rather, policy statements "describe those characteristic or significant qualities or features that typically constitute 'extraordinary and compelling reasons.'" McGee, 992 F.3d at 1045 (quoting § 3582(c)(1)(A)). In short, "Congress intended for the Sentencing Commission's policy statements to serve as guideposts for district courts under the second part of the statutory test." McGee, 992 F.3d at 1048.

On November 1, 2023, the Sentencing Commission issued an applicable policy statement that amends U.S.S.G. §1B1.13, expanding what are "extraordinary and compelling reasons" for compassionate release and permitting defendants to file motions for compassionate release. See U.S.S.G. §1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)(Policy Statement). Before this amended § 1B1.13 policy statement, the Tenth Circuit had held that there were no current applicable policy statements from the Sentencing Commission, because the then existing policy statement was "applicable only to motions filed by the Director of the [Bureau of Prisons], and not to motions filed directly by defendants." Maumau, 993 F.3d at 837. At the time, § 1B1.13 referred only to motions that the Bureau of Prisons director filed, because § 1B1.13 was issued shortly before the passage of the First Step Act of 2018, Pub. L. No. 115-39132 Stat 5194 (December 21, 2018)("First Step Act"), which, for the first time, provides defendants with the ability to bring motions for compassionate release. U.S.S.G. § 1B1.13(a) (2018)(amended 2023). The Tenth Circuit reasoned that, because § 1B1.13 did not recognize that defendants could bring

compassionate release motions, the policy statement was not applicable to motions brought by defendants. See McGee, 992 F.3d at 1050 ("[T]he Sentencing Commission's most recent policy statement, which was issued prior to the First Step Act, is not applicable."); United States v. Carr, 851 F. App'x 848, 853 (10th Cir. 2021)(reversing a district court where the district court relied on the policy statement, because, "[a]lthough it was within the district court's discretion to conclude the application notes to U.S.S.G. § 1B1.13 still provided the best definition and description of extraordinary and compelling reasons under the circumstances," it was "not apparent the district court recognized U.S.S.G. § 1B1.13 was no longer controlling"). But see United States v. Bryant, 996 F.3d 1243, 1247 (11th Cir. May 7, 2021)("The Commission's standards are still capable of being applied and relevant to all Section 3582(c)(1)(A) motions, whether filed by the [Bureau of Prisons] or a defendant. . . . 1B1.13 is still an applicable policy statement for a Section 3582(c)(1)(A) motion, no matter who files it.").

The 2023 amendments expressly "revise[] § 1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and [Bureau of Prisons]-filed motions." 88 Fed. Reg. 28256-57. Compare U.S.S.G. § 1B1.13(a) (2018)(amended 2023) ("Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."), with U.S.S.G. § 1B1.13(a) (2023) ("Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."). Under § 1B1.13, courts still may decide on their own what constitutes extraordinary and compelling reasons, but, where a court recognizes a circumstance that is not identified specifically in the policy statement, the circumstance must be comparably serious to the identified reasons to be "consistent" with the policy statement. 18 U.S.C. §

3582(c)(1)(A).    See U.S.S.G. § 1B1.13(b)(5) (clarifying that courts may conclude that "extraordinary and compelling reasons exist" where "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the [explicitly identified extraordinary and compelling] reasons . . . are similar in gravity to the [explicitly identified extraordinary and compelling reasons"). In addition, the 2023 amendment expands the list of "extraordinary and compelling reasons" in § 1B1.13's application notes in numerous ways. For example, the amendment: (i) revises the "Medical Circumstances of the Defendant" subsection to include "medical circumstances not expressly identified in § 1B1.13 that were most often cited by courts in granting sentence reduction motions during the pandemic"; (ii) adds a new provision for cases in which a defendant's parent is incapacitated to the "Family Circumstances" subsection; (iii) and creates new subsections for "unusually long sentences" and for defendants who have been victims of "sexual assault perpetrated by [Bureau of Prisons] personnel." 88 Fed. Reg. 28257.

The current U.S.S.G. § 1B1.13 reads, in full:

> **(a)** **In General**. -- Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that --
>
> > **(1)**   **(A)**   extraordinary and compelling reasons warrant the reduction; or
> >
> > **(B)**   the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

**(2)**    the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

**(3)**    the reduction is consistent with this policy statement.

**(b)    Extraordinary and Compelling Reasons.** -- Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

**(1)    Medical Circumstances of the Defendant.** --

**(A)**    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(B)**    The defendant is --

**(i)**    suffering from a serious physical or medical condition,

**(ii)**    suffering from a serious functional or cognitive impairment, or

**(iii)**    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(C)**    The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

**(D)**    The defendant presents the following circumstances --

**(i)**    the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing

- 34 -

public health emergency declared by the appropriate federal, state, or local authority;

**(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

**(iii)** such risk cannot be adequately mitigated in a timely manner.

**(2)** **Age of the Defendant.** -- The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(3)** **Family Circumstances of the Defendant.** --

**(A)** The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

**(B)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(C)** The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

**(D)** The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

**(4)** **Victim of Abuse.** -- The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

**(A)**     sexual abuse involving a "sexual act," as defined in 18 U.S.C. 2246(2) (including the conduct described in 18 U.S.C. 2246(2)(D) regardless of the age of the victim); or

**(B)**     physical abuse resulting in "serious bodily injury," as defined in the Commentary to § 1B1.1 (Application Instructions);

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

**(5)     Other Reasons.** -- The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

**(6)     Unusually Long Sentence.** -- If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

**(c)     Limitation on Changes in Law.** -- Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

**(d)     Rehabilitation of the Defendant.** -- Pursuant to 28 U.S.C. 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling

- 36 -

reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

      **(e)    Foreseeability of Extraordinary and Compelling Reasons.** -- For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

U.S.S.G. § 1B1.13.

**c.    The 18 U.S.C. § 3553(a) Factors.**

At the third step of the three-part compassionate release test, courts must consider "the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A), and "determine whether . . . the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case," McGee, 992 F.3d at 1042 (quoting United States v. Jones, 980 F.3d at 1107)(brackets in McGee and United states v. Jones). "Section[] 3553(a) describes the factors courts should consider when sentencing defendants." United States v. Eccleston, 543 F. Supp. 3d at 1147. Specifically, the Parsimony Clause directs courts to impose a sentence "sufficient, but not greater than necessary" to comply with four purposes enumerated in 18 U.S.C. § 3553(a)(2):

     (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

     (B)    to afford adequate deterrence to criminal conduct;

     (C)    to protect the public from further crimes of the defendant; and

     (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C.  § 3553(a)(2)(A)-(D).    See  18 U.S.C.  § 3551 ("[A]  defendant . . . shall  be

sentenced . . . so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) . . . .").  To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines;[13] (ii) the nature of the offense and of the defendant's character; (iii) the available sentences; (iv) the policy favoring uniformity in sentences for defendants who commit similar crimes; (v) the need to provide restitution to victims; and (vi) any pertinent United States Sentencing Commission policy statements in effect on the date of sentencing.  See 18 U.S.C. § 3553(a)(1), (3)-(7).  "[T]he Supreme Court has determined that courts may consider post-sentencing conduct in assessing the § 3553(a) factors when considering whether to adjust a previously imposed sentence."  United States v. Allen, 956 F.3d 355, 358 (6th Cir. 2020)(citing Pepper v. United States, 562 U.S. 476, 487-93 (2011)).  See United States v. Gonzales, 547 F. Supp. 3d at 1139 ("The Court . . . will apply the § 3553(a) factors to Gonzales' pre-sentencing conduct as well as his conduct after the Court imposed his sentence in 2016."); United States v. Eccleston, 543 F. Supp. 3d at 1148-51 (concluding that the defendant's post-conviction history, including complete lack of disciplinary record and significant rehabilitation programming while incarcerated, outweighed the defendant's pre-conviction criminal history, particularly considering the defendant's young age at the time he committed the offense of conviction).

---

[13]Although the Guidelines are no longer mandatory, see United States v. Booker, 543 U.S. 220, 261 (2005), both The Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration, see Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  The Guidelines are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . ."  United States v. Cage, 451 F.3d at 593.

## ANALYSIS

The Court denies Hurtado's Compassionate Release Motion, because Hurtado does not meet the mandatory administrative exhaustion requirement, and even if he did, he does not meet the three-part test for compassionate release.   Namely, Hurtado's medical and family circumstances are not extraordinary and compelling reasons to warrant compassionate release, and compassionate release is inconsistent with the applicable Guidelines policy statement.  The Court grants, however, Hurtado's Sentence Reduction Motion, because retroactively applying the Sentencing Guidelines' Amendment 821 results in a sentence reduction, a sentence reduction is consistent with the applicable Guidelines policy statement, and the U.S.S.G. § 3553(a) sentencing factors warrant a sentence reduction.  The Court, therefore, re-sentences Hurtado to 135 months of incarceration, which is at the bottom end of the new Sentencing Guideline range of 135 to 141 months.

## I.     THE COURT DENIES THE COMPASSIONATE RELEASE MOTION.

The Court "generally 'may not modify a term of imprisonment once it has been imposed.'" Dillon v. United States, 560 U.S. 817, 819 (2010)(quoting 18 U.S.C. § 3582(c)).   In 2018, Congress' passing of The First Step Act created an exception to this general rule.  See 18 U.S.C. § 3582(c)(1)(A).  First, inmates may file for compassionate release directly to the court after exhausting their administrative remedies or after thirty days from when the warden's office receives such a request, whichever is earlier.  See U.S.C. § 3582(c)(1)(A).   After a defendant satisfies § 3582(c)(1)(A)'s exhaustion requirement, a district court may grant a motion for reduction of sentence only if three requirements are met: (i) the district court concludes that extraordinary and compelling reasons warrant such a reduction; (ii) the district court concludes that such a reduction is consistent with applicable policy statements that the Sentencing

Commission issues; and (iii) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable, and concludes that the factors warrant a reduction in the defendant's sentence. See Maumau, 993 F.3d at 821. The Court concludes that Hurtado has not exhausted his administrative remedies and further denies the Compassionate Release Motion on the merits, because Hurtado does not meet the three-part test for compassionate release.

### A.    HURTADO HAS NOT EXHAUSTED HIS ADMINISTRATIVE REMEDIES.

As a threshold matter, the United States contends that Hurtado has not exhausted his administrative remedies. See Compassionate Release Response at 4. Hurtado must exhaust his administrative remedies as a prerequisite to seeking compassionate release. See 18 U.S.C. § 3582(c)(1)(A). Before a defendant files a motion, the defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). See United States v. Hemmelgarn, 15 F.4th 1027, 1030 (10th Cir. 2021)(same). In the Tenth Circuit, 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement is mandatory rather than judicially waivable. See United States v. Johnson, 849 Fed. Appx. 750, 753 (10th Cir. 2021).[14]

---

[14]United States v. Johnson, 849 Fed. Appx. 750 (10th Cir. 2021) is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

Here, Hurtado did not make the necessary request to the Bureau of Prisons to file a compassionate release motion on his behalf before filing the Compassionate Release Motion.  On March 29, 2021, Hurtado filed the Compassionate Release Motion.  Only afterwards, on June 25, 2023, Hurtado wrote a request letter to the warden for a "3582(c)(1)(A) Reduction In Sentence," but the request does not indicate that the warden received the request letter.  Warden Letter at 6.  The section at the bottom for a staff member's signature, date, and disposition are blank.  See Warden Letter at 6.  Furthermore, fifteen days later, on July 10, 2023, Hurtado asserts erroneously that he exhausted his administrative remedies.  See Compassionate Release Letter at 1.  Because Hurtado does not show when the warden received his request, much less that thirty days have passed since receipt, the Court concludes that Hurtado has not properly exhausted his administrative remedies.  See 18 U.S.C. § 3582(c)(1)(A).  The Court, nevertheless, also denies Hurtado's Compassionate Release Motion on the merits of his claims.

**B.    HURTADO DOES NOT MEET THE THREE-PART TEST FOR COMPASSIONATE RELEASE MOTIONS.**

To grant a motion for compassionate release, the district court must address three steps.  See § 3582(c)(1)(A); United States v. Bonilla, No. 23-5096, 2024 WL 1672366, at *2 (10th Cir. April 18, 2024)(unpublished).   A district court must: (i) "find whether extraordinary and compelling reasons warrant a sentence reduction"; (ii) "find whether such reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (iii) "consider any applicable 18 U.S.C. § 3553(a) factors and determine whether, in its discretion, the reduction

---

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that, United States v. Johnson, and United States v. Bonilla, No. 23-5096, 2024 WL 1672366 (10th Cir. April 18, 2024) have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." United States v. Bradley, 97 F.4th 1214, 1217 (10th Cir. 2024)(quoting United States v. Hald, 8 F.4th at 937-38). At the first step of the compassionate release test, district courts "have the authority to determine for themselves what constitutes extraordinary and compelling reasons." United States v. Hald, 8 F.4th at 938 n.4. See McGee, 992 F.3d at 1044 ("Congress intended to afford district courts with discretion, in carrying out the first step of the statutory test in § 3582(c)(1)(A)(i), to independently determine the existence of extraordinary and compelling reasons . . . ."). This discretion, however, "is bounded by the requirement under step two of the statutory test that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission." Maumau, 993 F.3d at 832.

The Tenth Circuit previously had held that the U.S.S.G. § 1B1.13 policy statement did not constrain district courts considering compassionate release motions that defendants bring; however, following November 1, 2023, amendments to the Guidelines, which "reflect that compassionate release motions may be brought by either the Director of the Bureau of Prisons or the defendant," the Tenth Circuit recognizes that the § 1B1.13 policy statement "is now plainly applicable to motions for sentence reductions filed by either the Director of the Bureau of Prisons or a defendant." United States v. Bradley, 97 F.4th at 1217 n.1. See United States v. Thompson, 2024 WL 1557126, at *19 (D.N.M. April 10, 2024)(Browning, J.)("[T]he Court concludes that U.S.S.G. § 1B1.13 is now an applicable policy statement and that the Court must, therefore, consider whether a reduction in Thompson's sentence would be consistent with § 1B1.13."). See United States v. Hald, 8 F.4th at 938 n.4 ("[I]t would hardly be an abuse of discretion for a district court to look to the present policy statement for guidance.").

The Court concludes that: (i) Hurtado lacks extraordinary and compelling reasons to warrant a sentence reduction; (ii) a sentence reduction is inconsistent with the applicable policy statements; and (iii) that the applicable 18 U.S.C. § 355(a) factors do not warrant compassionate release.

### C.    HURTADO HAS NOT SHOWN EXTRAORDINARY OR COMPELLING REASONS TO GRANT COMPASSIONATE RELEASE.

At the first step of the three-part compassionate release test, the Court determines whether "extraordinary and compelling reasons warrant" a sentence reduction.    18 U.S.C. § 3582(c)(1)(A)(i).  See McGee, 992 F.3d at 1042.  While the Court has "the authority to determine what constitutes extraordinary and compelling reasons," United States v. Hald, 8 F.4th at 938 n.4, this discretion "is bounded by the requirement under step two of the statutory test that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission," Maumau, 993 F.3d at 832.  District courts may look to the U.S.S.G. § 1B1.13 policy statement, which provides a list of circumstances under which extraordinary and compelling reasons exist, to guide and inform their analysis under the first step of the statutory test.  See United States v. Hald, 8 F.4th at 938 n.4.  Here, Hurtado argues that his health conditions -- namely his untreated abscess in his side, his delayed dental care, and his hepatitis C -- are extraordinary and compelling reasons for his release.  See Compassionate Release Motion at 2.  The Court concludes that Hurtado's medical conditions and his family situation do not fall under any of U.S.S.G. § 1B1.13's list of extraordinary and compelling reasons to warrant release.

1.    **Hurtado's Medical Conditions Are Not Severe Enough to Constitute Extraordinary or Compelling Reasons to Warrant Compassionate Release.**

Hurtado's medical conditions and risk of exposure to COVID-19 do not put him at high risk of severe illness.  See U.S.S.G. § 1B1.13(A)-(D).  Judges in this district have concluded that a defendant's medical conditions are "extraordinary and compelling" to warrant compassionate release when the condition is terminal.  See United States v. Bauer, 554 F. Supp. 3d 1109, 1112-13 (D.N.M. 2021)(Johnson, C.J.)(concluding that the defendant's numerous, serious, and irreparable debilitations demonstrate extraordinary and compelling reasons to reduce his sentence); United States v. Lopez, 487 F. Supp. 3d 1156, 1158 (D.N.M. 2020)(Vázquez, J.)(recognizing that, "where the defendant is suffering from a terminal illness," compassionate release may be warranted).  In United States v. Burke, No. CR 21-0655 JB, 2024 WL 3829969 at *20-21 (D.N.M. Aug. 15, 2024)(Browning, J.), the Court grants defendant Burke's compassionate release motion because his medical conditions -- Halloway's Stage V chronic kidney disease and end-stage organ failure -- one so serious and extensive that they are "serious medical conditions from which Burke 'is not expected to recover.'"   United States v. Burke, 2024 WL 3829969 at *21 (citing U.S.S.G. § 1B1.13(b)(1)(B)(i)).  In contrast, here, Hurtado's medical conditions, while legitimate health concerns, are not "so serious and extensive" to warrant compassionate release.  Hurtado suffers from an "unknown abscess/tumor in his side" which he asserts is the size of a baseball and continues to grow, and he asserts the abscess causes regular pain and impacts mobility.  See Hearing Supplement at 3-4, filed July 1, 2024 (Doc. 163).  This condition is not an irreparable or terminal illness, and the medical report shows that Hurtado's symptoms are mild.  A November 30, 2021, medical report indicates that Dr. Sang-Gyou Rho, M.D., notes that Hurtado's two-year tumor growth "is causing mild discomfort" and that Hurtado "denies any

weakness/tenderness/numbness." Medical Report at 35. Hurtado also "denies any unintended weight loss, fevers, shaking chills, night sweats," and "[d]enies any shortness of breath, cough, congestion, runny nose, nausea, vomiting, abdominal pain, bloody bowel movements, or painful urination." Medical Report at 35. Further, despite Hurtado's statement that the tumor is untreated, the prison medical records indicate that health services monitor the issue regularly; Hurtado's December 23, 2020, clinical exam shows that Dr. Andrew Grasley, M.D., notes the "localized swelling, mass and lump, trunk," schedules a radiology scan for February 6, 2021, and schedules a chronic care visit for December 23, 2021. Medical Report at 56. Hurtado's December 8, 2021 clinical exam shows that Dr. Nelson Ayala-Rubio, M.D., assesses the "localized swelling, mass and lump, trunk," and also notes that he "Appears Well, Alert and Oriented" and that his Cardiovascular Observation is "Within Normal Limits, Normal Rate, Regular Rhythm" and his Cardiovascular Auscultation[15] is "Regular Rate and Rhythm (RRR), Normal S1 and S2." Medical Report at 48. None of the medical records list Hurtado's tumor as indicative of a chronic illness or end-stage disease like in United States v. Burke, 2024 WL 3829969 at *21, or as "numerous, serious, and irreparable" like in States v. Bauer, 554 F. Supp. 3d at 1112-13. To the contrary, the evidence shows that the tumor is an ordinary abscess that the health services at the Bureau of Prisons regularly monitors. Similarly, the medical records do not reflect that Hurtado's delayed dental work and his Hepatitis C, which he contracted in prison, are severe illnesses. His medical records show that doctors monitor his Hepatitis C regularly -- with entries for "Chronic Hepatitis

---

[15]Auscultation is a method a healthcare provider may use to listen to the sounds of a patient's heart, lungs, arteries and abdomen. It involves placing a stethoscope directly onto the chest, back and/or abdomen and is used during physical exams to check the circulatory system, respiratory system, and gastrointestinal system. Auscultation, Cleveland Clinic, https://my.clevelandclinic.org/health/diagnostics/23080-auscultation (last visited October 25, 2024).

C" or "Chronic viral Hepatitis C" from 2016, 2018, 2020, and 2021. Medical Report at 42, 48. His dental conditions consist of "acute gingivitis, plaque induced," which is ongoing, and an "unsatisfactory restoration of tooth," which is resolved. Medical Report at 51. Unfortunately, many inmates have Hepatitis C, which often comes from drug use, see Hepatitis C Prevention and Control, Centers for Disease Control & Prevention, cdc.gov/hepatitis-c-prevention/index.html (May 16, 2024)(last visited October 26, 2024), and have not taken care of their physical health, such as delayed dental care. Moreover, there is no evidence in the record that Hurtado will be able to secure healthcare outside of prison that is any better than the care he receives currently. The Court remains confident that the Bureau of Prisons does a good job of providing inmates with medical care. The Court concludes, therefore, that Hurtado's medical conditions in themselves are not extraordinary or compelling reasons to warrant compassionate release.

Hurtado also argues that he is "more vulnerable than the average person to risk of serious compromise or death from COVID-19." Compassionate Release Motion at 4. General concerns about potential exposure to COVID-19 alone do not demonstrate an extraordinary and compelling reason for a reduced sentence. See United States v. Gonzales, 547 F. Supp. 3d at 1124-35 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.")(quoting United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)). Rather, a defendant must demonstrate how his or her medical conditions make contracting COVID-19 more likely, or make it more likely that acquiring the virus would result in complications. See United States v. Baca, No. CR 16-1613, 2020 WL 5369078, at *15 (D.N.M. Sept. 8, 2020)(Browning, J.)("[C]ases in which COVID-19 is a factor for compassionate release require more than speculative complications."). In addition, "access to vaccination . . . weigh[s] against a finding of extraordinary and compelling reasons," United States

v. Hald, 8 F.4th 932 at 939 n.5; see United States v. Jefferson, No. 22-8067, 2023 WL 5572550, at *2 (10th Cir. Aug. 29, 2023)(collecting cases), and numerous courts have held "that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances," United States v. Baeza-Vargas, 2021 WL 1250349, at *2-3 (D. Ariz. April 5, 2021)(Teilborg, J.).

Here, Hurtado does not explain why his medical conditions place him at heightened risk of "serious compromise or death" from COVID-19, beyond merely asserting that fact. In contrast, in United States v. Haworth, CR 95-0491 JB, 2023 WL 8112827 (D.N.M. Nov. 22, 2023)(Browning, J.), the Court concluded that the defendant's tuberculosis "should be considered a risk factor for severe COVID disease," according to at least two medical journals and the Centers for Disease Control & Prevention. See 2023 WL 8112827, at *11 (first citing Tuberculosis and COVID-19 Co-Infection: Description of the Global Cohort at 1, Eur. Respiratory J. (2022); then citing Tuberculosis and COVID-19 Interaction: A Review of Biological, Clinical and Public Health Effects at 152, Pulmonology (2021); and then citing Latent TB Infection and TB Disease, Ctrs. for Disease Control & Prevention (December 11, 2020), https://www.cdc.gov/tb/topic/basics/tbinfectiondisease.htm). Hurtado provides no evidence showing that his abscess, his dental work, or his chronic Hepatitis C are risk factors for severe COVID diseases. Furthermore, Hurtado received the COVID-19 vaccine at least once in 2021. See COVID-19 Vaccine Consent - Inmate, filed February 7, 2022 (Doc. 116-1 at 32); United States v. Hald, 8 F.4th 932 at 939 n.5 (noting that "access to vaccination . . . weigh[s] against a finding of extraordinary and compelling reasons"); United States v. Eccleston, 543 F. Supp. 3d 1092, 1140 (D.N.M. 2021)(Browning, J.)(recognizing that "the COVID-19 vaccine's increasingly widespread availability through the [Bureau of Prisons]" reduces an inmates' chance of

contracting COVID-19). Moreover, the risk of COVID-19, both in society and in the Bureau of Prisons, is greatly reduced and is no more serious today than many other diseases. The Centers for Disease Control & Prevention explains that "severe outcomes from COVID-19 have substantially underlined decreased since 2020 and 2021," and that COVID-19 ranks the 10th most common cause of death in the U.S. in 2023, which is a drop from 3rd in 2020 and 2021 and 4th in 2022. See The Changing Threat of COVID-19, Centers for Disease Control & Prevention, https://www.cdc.gov/ncird/whats-new/changing-threat-covid-19.html (February 23, 2024)(last visited October 26, 2024)(emphasis in original). The Court also notes in a 2024 case that the defendant is not necessarily at greater risk for contracting COVID-19 while incarcerated, because "you can get COVID in New Mexico in various situations, not just because you're in prison." United States v. Sandoval, No. CR 22-1010 JB, 2024 WL 2882117 at *29 (D.N.M. June 7, 2024)(Browning, J.). The Court, therefore, concludes that Hurtado's medical conditions, combined with his prior COVID-19 vaccination, do not put him at higher risk of severe illness or death from COVID-19.

Hurtado's conditions demonstrate a similar level of non-severity and a similar lack of heightened risk of COVID-19 as the defendant's in United States v. Hemmelgarn, 15 F.4th 1027 (10th Cir. 2021). There, Hemmelgarn had (i) mild asthma, (ii) a benign cyst on his lungs, (iii) muscle aches, headaches, shortness of breath, and anxiety from contracting COVID-19, and (iv) post-traumatic stress disorder from witnessing another inmate die from COVID-19 complications. See 15 F.4th at 1031. The Tenth Circuit affirms the district court's denial of Hemmelgarn's motion for compassionate release, holding that the defendant does not have a medical condition that puts him at high risk of severe illness from COVID-19, he receives treatment for his medical issues, and there are no confirmed cases of COVID-19 at the defendant's

prison.  See United States v. Hemmelgarn, 15 F.4th at 1031.  Similarly, here, Hurtado's medical conditions are neither severe nor put him at high risk of severe illness from COVID-19, and he receives ongoing treatment for his medical issues.  While Hurtado still has the tumor and has some pain, lives with chronic Hepatitis C and experiences delays in dental work, he has generally good health, and thus his medical conditions are not "extraordinary and compelling" reasons warranting compassionate release.  See Medical Report at 51; United States v. Hemmelgarn, 15 F.4th at 1031.

      **2.**    **Hurtado's Family Circumstances Are Not Extraordinary or Compelling to Warrant Compassionate Release.**

Hurtado also asserts that his son Jaydon Patterson and stepson Ayden[16] have urgent medical needs.  See Hearing Supplement at 6.  The Application Notes to the current Policy Statement recognize that certain family circumstances, including the "death or incapacitation of the caregiver of the defendant's minor child," and the "incapacitation of the defendant's spouse" where the defendant is the "only available caregiver for the spouse" constitute extraordinary and compelling circumstances.  U.S.S.G. § 1B1.13 n.1(C).  Here, because of a chronic respiratory illness, J. Patterson suffers from temporary hallucinations, chronic fatigue, and extremity pain. See Letter from Dacota Patterson to the Honorable Judge Browning at 1-2 (dated June 28, 2024), filed July 1, 2024 (Doc. 163-2)("D. Patterson Letter").  Ayden has autism and requires regular therapy.  See Hearing Supplement at 6; D. Patterson Letter at 1.  Hurtado does not demonstrate, however, that J. Patterson and Ayden's caregiver has died or is unable to care for them, or that Hurtado is the only possible caregiver.  See U.S.S.G. § 1B1.13 n.1(C).  Hurtado's girlfriend, Dacota Patterson, writes a letter explaining that she is a single parent to J. Patterson and Ayden. See Letter from Dacota Patterson to Judge Browning at 2 (dated June 28, 2024), filed July 1, 2024

---

[16]The record does not reflect Ayden's last name.

(Doc. 163-2)("Patterson Letter").  D. Patterson explains that, if Hurtado "were to be home, he would be able to assist me either going to appointments while I am working or for him to work while I am going to appointments."  D. Patterson Letter at 2.  This letter shows, to the contrary, that D. Patterson is an available caregiver, and that Hurtado's assistance would be helpful -- but not necessary -- to his children's conditions.  Hurtado's family is not in a situation much different from many other men in prison with families.  The Court similarly denies compassionate release for the defendant in United States v. Haworth, No. CR 95-0491 JB, 2023 WL 8112827 (D.N.M. Nov. 22, 2023)(Browning, J.), because the defendant does not prove that he is the "only potential caregiver for ailing mother," and he does not prove that his mother's numerous medical complications and recent knee replacement are so serious that her daily activities of life were "impossible" to do without the defendant's assistance.  2023 WL 8112827, at *12.  Cf. United States v. Washburn, No. 10-2456, 2023 WL 3853343, at *4 (D.N.M. June 6, 2023)(Urias, J.)("Defendant has established that the circumstances involving his mother's caregiving contributes to a finding of extraordinary and compelling reasons that warrant his compassionate release because he is the only available caregiver for her.").  The Court concludes, therefore, that Hurtado's family circumstances do not warrant compassionate relief under U.S.S.G. § 1B1.13.

### D.    A SENTENCE REDUCTION IS NOT CONSISTENT WITH THE SENTENCING COMMISSION POLICY STATEMENTS.

Even if the Court were to conclude that Hurtado's case presents extraordinary and compelling reasons, these reasons must be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The U.S.S.G. § 1B1.13 policy statement applicable to compassionate release is relevant here.  Further, the Sentencing Commission's November 1, 2023, amendments to the policy statement ("the Nov. 1 amendments")

expressly make it applicable to compassionate release motions that defendants bring.  See United

States v. Thompson, No. CR 12-3013 JB, 2024 WL 1557126 at *18 (D.N.M. April 10,

2024)(Browning, J.)("The Court concludes that U.S.S.G. § 1B1.13 is now an applicable policy

statement and that the Court must, therefore, consider whether a reduction in Thompson's sentence

would be 'consistent' with U.S.S.G. § 1B1.13." (citing United States v. Feliz, No. CR 16-0809

(VM), 2023 WL 8275897, at *4)(S.D.N.Y. Nov. 30, 2023)(Marrero, J.)).

Here, Hurtado filed his Motion before the Nov. 1 amendments became effective on

November 1, 2023.  See Compassionate Release Motion at 1.  The Court concludes, however, that

the Nov. 1 amendments are applicable.  See United States v. Thompson, 2024 WL 1557126 at *19.

In United States v. Thompson, the Court notes that U.S.S.G. § 1B1.13 is silent about which policy

statement applies -- the one applicable on the date the defendant files the compassionate release

motion, or the one applicable on the date the court decides the motion.  See 2024 WL 1557126, at

*19.  The Court concludes that the policy statement applicable on the date the court decides the

motion applies, because the Guidelines instruct the court to apply the policy statement in effect on

the "date on which the court reduces the defendant's term of imprisonment" under 18 U.S.C.

§ 3582(c)(2).  U.S.S.G. § 1B1.10 cmt. n.9.  See United States v. Thompson,2024 WL 1557126 at

*19.  Further, U.S.S.G. § 1B1.11 states, similarly, that, when imposing a sentence under 18 U.S.C.

§ 3583, "the court is to apply the guidelines and policy statements in effect at the time of

sentencing."  United States v. Thompson, 2024 WL 1557126 at *19 (citing U.S.S.G. § 1B1.11

cmt. backg'd).  The Court further explains:

> If the Sentencing Commission consistently advises that courts should apply the
> policy statement in effect on the date the court takes action, the harmonious-reading
> canon provides that § 1B1.13 should similarly be applied in the form it takes when
> the court passes judgement on the defendant's motion.  [A. Scalia & B. Garner,
> Reading Law: The Interpretation of Legal Text at] 180-82 [(2012)](outlining a

preference for construing provisions "together and in harmony" rather than "by critical analysis of a single provision").

United States v. Thompson, 2024 WL 1557126 at *19.  The Court also notes two other district courts in the Tenth Circuit that apply the new amendments to § 1B1.13 if they are in effect at the time of sentencing: United States v. Sosa, No. CR 20-0073, 2023 WL 9002764, at *2 (D. Utah December 28, 2023)(Sam, J.)(applying "[t]he Sentencing Commission's November 1, 2023 amendment to the compassionate release policy statement" to a motion for compassionate release filed on October 19, 2023), and United States v. Mulder, No. 19-CR-0157, 2023 WL 8621945, *1-2 (N.D. Okla. December 13, 2023)(Heil, III, J.)(applying the "newly revised § 1B1.13" to the defendant's compassionate release motion, which was "filed on September 28, 2023").  See United States v. Thompson, 2024 WL 1557126 at *19.  The Court, therefore, considers U.S.S.G. § 1B1.13 in its "current, amended form," which includes the Nov. 1 amendments.  United States v. Thompson, 2024 WL 1557126 at *19.  Here, a reduction is inconsistent with the U.S.S.G. § 1B1.13 policy statement for compassionate release, because neither his medical circumstances under U.S.S.G. § 1B1.13(b)(1), nor his family circumstances under U.S.S.G. § 1B1.13(b)(2) are extraordinary and compelling reasons to warrant compassionate release.

### E.    THE § 3553(A) FACTORS DO NOT SUPPORT COMPASSIONATE RELEASE, BECAUSE THEY DO NOT SUPPORT A DOWNWARD VARIANCE FROM THE GUIDELINES RANGE.

The United States' contention that the § 3553(a) factors do not favor a compassionate release sentence reduction is only two sentences.  See Compassionate Release Response at 5-6.  The United States points to the Court's prior analysis of the § 3553(a) factors, combined with Hurtado's disciplinary record while incarcerated and high risk of recidivism.  See Compassionate Release Response at 5-6.  The Court's consideration of the § 3553(a) factors may serve as an

independent bar to the reduction of a defendant's sentence.  See United States v. Wirichaga-Landavazo, No. 23-4040, 2023 WL 7166173, at *4 (10th Cir. October 31, 2023)("[E]ven if Wirichaga-Landavazo had presented extraordinary and compelling reasons for a sentence reduction, the district court did not abuse its discretion in denying Wirichaga-Landavazo's compassionate release motion based on the § 3553(a) factors.").  The Parsimony Clause, 18 U.S.C. § 3553(a), "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing."  Kimbrough v. United States, 552 U.S. 85, 101 (2007)(quoting 18 U.S.C. § 3553(a)).  These goals include:

> the need for the sentence imposed --
>
> > (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B)    to afford adequate deterrence to criminal conduct;
> >
> > (C)    to protect the public from further crimes of the defendant; and
> >
> > (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  The other applicable sentencing factors that the Court shall consider are: (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) "the kinds of sentences available"; (iii) "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines"; (iv) "any pertinent policy statement"; (v) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (vi) "the need to provide restitution to any victims of the

offense."  18 U.S.C. § 3553(a)(1), (3)-(7).  Courts may apply the § 3553(a) factors both to a defendant's pre-sentencing conduct, and to his or her conduct while incarcerated.  See United States v. Wesley, 60 F.4th 1277, 1286 (10th Cir. 2023), cert. denied, No. 23-6384, 2024 WL 2883879 (U.S. June 10, 2024).

District courts "may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do[es] not need to address the others."  United States v. Hemmelgarn, 15 F.4th 1027, 1029 (10th Cir. 2021)(quoting McGee, 992 F.3d at 1043).  See also United States v. Hald, 8 F.4th 932, 942-943 (10th Cir. 2021)(concluding that if the district court rejects a motion for compassionate release due to failure to satisfy one of the steps, the court is not required to "make the useless gesture of determining whether one of the other steps is satisfied").  Although the Court denies Hurtado's Compassionate Release Motion because no extraordinary and compelling reasons warrant a sentencing reduction, and because a reduction would be inconsistent with the applicable Guidelines policy statement, the Court still addresses the § 3553(a) factors to be thorough.  See United States v. Chavez-Meza, 854 F.3d 655, 661 (10th Cir. 2017)("Even though district courts need not explain their decisions in sentence-reduction orders, that does not mean that they should not do so."), aff'd, 585 U.S. 109 (2018).

The Court carefully considered the § 3553(a) factors when it sentenced Hurtado at the lowest end of the Guidelines range at the December 11, 2015 Sentencing Hearing ("December 11, 2015 Sentencing Hearing").  See Sentencing Minute Sheet at 1, filed December 11, 2015 (Doc. 76); Sentencing Transcript at 13:3-9, taken December 11, 2015 (Court)("Sentencing Tr.").[17]  The Guidelines range was 141 to 155 months.  See PSR ¶¶ 76, 78, at 14.  The rule 11(c)(1)(C) Plea

---

[17]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Agreement provides a range of 120 months to 216 months.  See Plea Agreement ¶ 18(a), at 7.  On the low end, the stipulation represents a variance downward; on the high end, the stipulation represents a variance upward.  At the hearing, and in this opinion and order, the Court identifies "about nine factors" that put downward pressure to take the sentence out of the Guidelines range and toward the bottom of the stipulated range.  See Sentencing Tr. at 14:13-16 (Court).  Some of these factors put downward pressure, while some are factors that are on both sides of the ledger.  First, the Court can use some supervised release, in place of incarceration, to try to deal with Hurtado's problems, particularly his addiction problem.  See Sentencing Tr. at 14:16-19 (Court).  Second, he is remorseful.  See Sentencing Tr. at 14:19 (Court).  Third, he is a young man.  See Sentencing Tr. at 14:19 (Court).  Fourth, the Court is reluctant to put someone away for such a long period of time when he recently had a new baby, he is getting life started, and there may be a chance of hope.  See Sentencing Tr. at 14:20-23 (Court).  Fifth, he has had a tough life with a father in prison; the Court is seeing this cycle repeat itself.  See Sentencing Tr. at 14:23-24 (Court).  Sixth, he seems to want to better himself and he is probably at a point where, at the age of twenty-one, he probably should want to do that.  See Sentencing Tr. at 14-15:24-5 (Court).  Seventh, his addiction -- the driving cause of this crime -- is something that the Court can address to some degree with supervised release instead of incarceration.  See Sentencing Tr. at 15:5-9 (Court).  Eighth, the Parsimony Clause puts downward pressure on the sentence; the Court never wants to impose a sentence that is greater than necessary to reflect the § 3553(a) factors.  See Sentencing Tr. at 15:9-10 (Court); 18 U.S.C. 3553(a).  These aggregate eight factors put downward pressure to take the sentence out of the Guidelines range and toward the bottom of the stipulated range.

The Court identifies a similar number of factors that put pressure to keep the sentence in the Guidelines range.  First, this offense is very serious.  See Sentencing Tr. at 15:11-13 (Court).

Second, this crime is a serious offense, not just from a drug standpoint, because the distribution of the drugs makes more people addicted, but this crime involves a gun being pointed at a medical professional -- a pharmacist at Smith's. <u>See</u> Sentencing Tr. at 15:14-19 (Court). Third, Hurtado had an intent to distribute these drugs. <u>See</u> Sentencing Tr. at 15:19-20 (Court). Fourth, the combination of things -- any one of them which is serious alone -- when put together, is very serious. <u>See</u> Sentencing Tr. at 15:20-22 (Court). Fifth, given these factors, the sentence must promote respect for the law. <u>See</u> Sentencing Tr. at 15:23 (Court). Sixth, given these factors, the sentence must provide a just punishment. <u>See</u> Sentencing Tr. at 15:24 (Court). Seventh, given the seriousness of this crime, the sentence must afford adequate deterrence both at a specific and general level. <u>See</u> Sentencing Tr. at 15:24-25 (Court). Eighth, the Court must protect the public. <u>See</u> Sentencing Tr. at 16:1 (Court). Ninth, the need to avoid unwarranted sentencing disparity among defendants with similar records also puts upward pressure to keep the sentence in the Guidelines range. <u>See</u> Sentencing Tr. at 16:2-4 (Court). Tenth, in trying to fashion a sentence that reflects sufficiently the § 3553(a) factors, Hurtado's second crime in which he had a gun puts upward pressure to keep the sentence in the Guidelines range. <u>See</u> Sentencing Tr. at 16:6-7 (Court). The Court references the second crime occurring on March 5, 2015, after which police arrested Hurtado after a traffic stop, and seized a loaded handgun, fifty-four grams of heroin, and 133 grams of methamphetamine. <u>See</u> PSR ¶ 13-16, at 5-6. Hurtado pled guilty to an information charging possession with intent to distribute methamphetamine in connection with the traffic stop arrest. <u>See</u> Plea Agreement ¶ 3, at 2.

The Court concludes that the factors that put downward pressure on the sentence and the factors that put upward pressure balance out each other and, therefore, a sentence within the Guidelines range is appropriate. <u>See</u> Sentencing Tr. at 16:7-12 (Court). At sentencing, after

carefully considering Hurtado's request for a variance downwards from the Guidelines range, the Court does not find it appropriate and uses as a starting point the Guidelines range of 141 to 155 months. See Sentencing Tr. at 16:8-12 (Court). The Court also has trouble justifying a variance below the Guidelines just to flatten the sentence to the bottom of the stipulated range. See Sentencing Tr. at 16:20-22 (Court). On the other hand, after also carefully considering the United States' request for a sentence at the upper end of the Guidelines range and an upward variance, the Court concludes that the Guidelines range effectively reflects the seriousness of the crime; unless there is something more egregious than what is already built into the Guidelines range, the Court is not inclined to crawl up the Guidelines range or grant an upwards variance. See Sentencing Tr. at 16:15-20 (Court). Accordingly, the Court declines to go to the high end of the Guidelines range or grant the 60 months variance upward that the United States requests. See Sentencing Tr. at 16:18-20 (Court). The Court, therefore, concludes that the Guidelines range is appropriate for the offense. As the record reflects, the Court considers the Guidelines range and concludes that a Guidelines sentence of 57 months for the first two counts -- counts one and five -- and one count of the Information reflects the offenses' seriousness, promote respect of the law, provides just punishment, affords adequate deterrence, both at a specific and general level, protects the public, and avoids unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. See Sentencing Tr. at 17:3-12 (Court); 18 U.S.C. § 3553(a). The Court's placement of Hurtado on supervised release effectively provides Hurtado with needed education, training, and care to help him avoid reoccurring problems in the future. See Sentencing Tr. at 17:13-16 (Court); 18 U.S.C. § 3553(a)(2)(D). In sum, the Court concludes that this sentence fully and effectively reflects 18 U.S.C. § 3553(a)'s sentencing factors. See Sentencing Tr. at 17:16-18 (Court). The parties have presented the Court with a reasonable range in their rule

11(c)(1)(C) plea agreement. <u>See</u> Sentencing Tr. at 17:18-19 (Court). The Court concludes that the sentence within that range is reasonable, which for a trial court, means that the sentence is sufficient but not greater than necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act. <u>See</u> Sentencing Tr. at 17:21-24 (Court); 18 U.S.C. § 3553(a) ("The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.").

Hurtado's disciplinary infractions during his incarceration, while concerning, also have no significant impact on the § 3553(a) factors so as to change the Court's conclusion that Hurtado should be sentenced at the bottom of the applicable Guidelines range. Hurtado's disciplinary infractions include possessing and using drugs/alcohol, possessing a non-hazardous tool, assaulting without serious injury, being absent from assignment, refusing to obey an order, and being in an unauthorized area. <u>See</u> Retroactive Guideline Amendment Memo at 2. None of these are so serious and aggravating that they cause the Court to impose a sentence outside of the Guidelines range or other than at the lower end of the applicable Guidelines range. The Court sees no sound reason to depart from its analysis of the § 3553(a) factors at the Sentencing Hearing, and still concludes today, even considering Hurtado's conduct during incarceration, that a Guidelines sentence is appropriate. <u>See</u> Sentencing Tr. 15:22-17:13 (Court). While the Court's task as a trial court is not to come up with what it thinks is a reasonable sentence, <u>see</u> <u>United States v. Conlan</u>, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)."), the Court believes this sentence is reasonable, <u>see</u> <u>United States v. Ellis</u>, No. CR 03-1890, 2008 WL 4811168, at *11 (D.N.M. June 3, 2008)(Browning, J.)(concluding that the Court's previous decision to sentence the defendant at

the bottom end of the Guidelines range is reasonable with respect to the recalculated sentence). The § 3553(a) factors, therefore, do not warrant any sentence reduction below the 141-month sentence that is at the low end of the Guidelines range at the time of sentencing.  The Court, therefore, denies Hurtado's Compassionate Release Motion, because he does not meet any of the three requirements: his medical and family reasons are not extraordinary and compelling, a reduction goes against the applicable Guidelines policy statement, and the § 3553(a) factors do not warrant a sentence outside of the Guidelines range.

## II.    HURTADO IS ENTITLED TO A SENTENCE REDUCTION UNDER THE AMENDMENT TO THE GUIDELINES.

The Court grants the Sentence Reduction Motion.  In applying the three-step analysis that C.D., 848 F.3d at 1289, mandates, the Court first concludes that Hurtado was sentenced based on a Guideline range that the Sentencing Commission subsequently lowered, because Hurtado's Guideline imprisonment range was 141 to 155 months when he was sentenced and Amendment 821's retroactive application results in a new Guideline range of 135 to 147 months.  Second, the Court concludes that a reduction in Hurtado's sentence is consistent with the U.S.S.G. § 1B1.10 policy statement.  Third, the Court concludes that Hurtado is entitled to relief considering the § 3553(a) sentencing factors under the Sentence Reduction motion.

### A.    AMENDMENT 821 LOWERS THE GUIDELINE RANGE THAT THE COURT USED TO SENTENCE HURTADO.

The Court concludes, as the parties and the USPO all agree, that Hurtado has satisfied the first prong of the § 3582(c)(2) analysis, because Amendment 821's retroactive application results in a lower Guideline imprisonment range than Hurtado had at the time of his sentencing.  See C.D., 848 F.3d at 1289.  Amendment 821 applies retroactively.  See U.S.S.G. § 1B1.10(a)(1), (d); United States v. Claybron, 88 F.4th 1226, 1228 (7th Cir. 2023).  Amendment 821's Part A alters U.S.S.G.

§ 4A1.1, changing the way criminal history status points are calculated for the purposes of establishing the defendant's criminal history category.  Section 4A1.1(e) adds "status" points to a defendant's criminal history score if the defendant "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release[ ] or escape status."  U.S.S.G. § 4A1.1(e).  Under Amendment 821's Part A, defendants with 7 or more criminal history status points now receive 1 status point rather than 2 additional status points, and defendants with less than 7 criminal history status points receive no additional status points if they committed their offense while under a criminal justice sentence.  See Supp. to App. C at 235; United States v. Fabian-Hurtado, No. CR 21-644, 2024 WL 706934, at *2 (D.N.M. February 21, 2024)(Johnson, C.J.).

The PSR calculates Hurtado's criminal history score at 4 by adding 2 points to Hurtado's subtotal criminal history score of 2 pursuant to § 4A1.1(d), because Hurtado committed his offense "while under a criminal justice sentence."  PSR ¶¶ 50-52, at 10.  Pursuant to Amendment 821, no status points are added pursuant to § 4A1.1(e) if the defendant's subtotal criminal history score is less than 7.  See Supp. to App. C at 235; U.S.S.G. § 4A1.1(e).  Accordingly, if Amendment 821 had been in place when Hurtado was sentenced, Hurtado's criminal history score would have been 2.  See U.S.S.G. § 4A1.1(e).  Pursuant to the U.S.S.G. Ch. 5, Pt. A Sentencing Table, therefore, Hurtado's criminal history category would have been a II rather than a III.  See United States v. Fabian-Hurtado, 2024 WL 706934, at *3 (concluding that the defendant's new criminal history category is a IV rather than a V based on 8 criminal history points plus the 1 status point added pursuant to § 4A1.1(e)).  With an offense level of 23, Hurtado's properly calculated Guideline imprisonment range is 135-147 months as opposed to 141-155 months, which was Hurtado's Guideline imprisonment range at sentencing before Amendment 821.  See Retroactive Guideline

Amendment Memo at 1-2.  Accordingly, Hurtado has shown that "he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing." C.D., 848 F.3d at 1289.

The Court considered the Guidelines range at sentencing.  The parties entered into a rule 11(c)(1)(C) plea agreement, in which Hurtado pled guilty to Counts 1, 2, and 5 of the Indictment in connection with the pharmacy robbery, and to an information charging possession with intent to distribute methamphetamine in connection with the traffic stop arrest.  See Plea Agreement ¶ 3, at 2.  Hurtado agreed to a sentencing range between 10 to 18 years -- or 120 to 216 months.  See Plea Agreement ¶ 18(a), at 7.  The parties were free to argue for whatever sentence they wanted within that stipulated range.  See Plea Agreement ¶ 18(a), at 7.  At the hearing, the Court notes multiple times that it considers the Guidelines' applicable sentencing range, weighing both Hurtado's reasons to "put downward pressure" on his sentence, and the United States' reasons to "continue to put pressure to keep it up."  Sentencing Tr. at 14:13-16; 15:11-13 (Court).  Reasons that put downward pressure include that the Court could implement supervised release "in place of incarceration" to deal with Hurtado's drug addiction, Sentencing Tr. at 14:16-19 (Court), and that the Court should not impose a sentence greater than is necessary, Sentencing Tr. at 16:9-10 (Court).  On the other hand, the Court also notes that the seriousness of the offense -- brandishing a gun at a pharmacist at Smith's and then intending to distribute drugs -- warrants a sentence which promotes respect for the law and provides a just punishment.  Sentencing Tr. at 15:19-22 (Court).  This factor places upward pressure on Hurtado's sentence.  See Sentencing Tr. at 15:22 (Court).  After hearing the arguments, the Court concluded that Hurtado was not entitled to any variance -- whether downward as Hurtado argues or upward as the United States argues -- but needed a Guidelines sentence, because a Guidelines sentence "reflect[s] the seriousness" of Hurtado's

offense, "promote[s] respect for the law," "provide[s] just punishment," "afford[s] adequate deterrence both at a specific and general level," "protect[s] the public," and "avoids unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct." Sentencing Tr. 16:12-13; 17:4-12 (Court). Not seeing any particularly aggravating factors that the Guidelines range does not account for, the Court sentenced Hurtado to 141 months at the low end of the Guidelines range. See Judgment at 3. The Court also then placed Hurtado on supervised release, stating that it would provide Hurtado education, training, and care "to avoid these problems ever occurring in the future." Sentencing Tr. 17:13-16. If the Guidelines range had been lower, the Court is confident it would have sentenced Hurtado at the lower end of the Guideline range.

### B.    A REDUCTION IN HURTADO'S SENTENCE IS CONSISTENT WITH THE APPLICABLE SENTENCING COMMISSION POLICY STATEMENT.

A reduction in Hurtado's sentence from 141 months to 135 months is consistent with U.S.S.G. § 1B1.10, the policy statement concerning reductions in terms of imprisonment as a result of an amended Guideline range. See C.D., 848 F.3d at 1289; U.S.S.G. § 1B1.10(a)(1) ("As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement."). Under the policy statement § 1B1.10, a reduction is inconsistent if none of the amendments listed in in § 1B1.10(d) is applicable, or one of the amendments in § 1B1.10(d) does not lower the defendant's applicable Guideline range. See § 1B1.10(a)(2)(A)(B). Here, § 1B1.10(d) explicitly lists Amendment 821 as a covered amendment, and Amendment 821 lowers Hurtado's applicable Guideline range, so the reduction is consistent with § 1B1.10(a). A reduction in Hurtado's sentence also aligns with the remaining applicable portions of the § 1B1.10 policy statement: Hurtado's requested 135-month sentence does not

reduce his term of imprisonment "to a term that is less than the minimum of the amended guideline range," U.S.S.G. § 1B1.10(b)(2)(A), nor will "the reduced term of imprisonment be less than the term of imprisonment the defendant has already served," U.S.S.G. § 1B1.10(b)(2)(c). Additionally, the Court's Memorandum Opinion and Order is effective after February 1, 2024, as § 1B1.10(e)(2) requires.

Finally, under § 1B1.10, a court also may review a defendant's entitlement to relief based on his post-sentencing conduct, and must consider "the nature and seriousness of any threat to public safety in determining whether a reduction is warranted." United States v. Osborn, 679 F.3d 1193, 1195 (10th Cir. 2012). See U.S.S.G. § 1B1.10 cmt. n.1(B)(ii). While Hurtado has incurred several disciplinary infractions while in custody, none of them are so serious -- possessing and using drugs/alcohol, possessing a non-hazardous tool, assaulting without serious injury, being absent from assignment, refusing to obey an order, and being in an unauthorized area -- that they should cause the Court not to grant the eligible relief of a sentence reduction under Amendment 821. See Retroactive Guideline Amendment Memo at 2. Further, Hurtado participates in various vocational and educational programs, including obtaining his GED, working towards a carpentry certification, and working on addiction recovery. See Retroactive Guideline Amendment Memo at 2; Draft Transcript of July 3, 2024, Hearing at 12:9-24 (taken July 3, 2024)(Franco).[18] The Court concludes that a reduction in Hurtado's sentence from 141 months to 135 months will not pose a serious danger to the community. See U.S.S.G. § 1B1.10 cmt. n.1(B)(ii). A reduction in Hurtado's sentence, therefore, is consistent with all relevant aspects of the U.S.S.G. § 1B1.10

---

[18]The Court's citations to the draft transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

policy statement: the policy statement governs Amendment 821 sentence reductions, a reduction under Amendment 821 lowers Hurtado's applicable Guideline range, and a reduction does not reduce his term of imprisonment below the minimum of the amended guideline range nor does it reduce his term of imprisonment to less than what he has already served.

### C.    THE § 3553(A) SENTENCING FACTORS WARRANT A SENTENCE REDUCTION UNDER AMENDMENT 821.

Despite conceding that Hurtado is eligible for a sentence reduction under Amendment 821, the United States argues that the § 3553(a) factors do not warrant a sentence reduction.  See Sentence Reduction Response at 4.  The United States points to his offense's nature and circumstances, along with his criminal history and characteristics.  See Sentence Reduction Response at 4-6; United States v. Osborn, 679 F.3d at 1196 ("[T]he nature and circumstances of the underlying offense are eminently proper considerations in a motion under § 3582(c)(2).").  Specifically, the United States points to the facts that Hurtado was on probation for a prior burglary crime -- stealing a home television -- when he: (i) robs a Smith's pharmacy at gunpoint and admits that he intends to distribute the stolen pills, and (ii) two months later, possesses a gun and possesses narcotics with intent to distribute.  See Sentence Reduction Response at 5; PSR ¶¶ 3, at 4; id. ¶ 49, at 10.

Having considered the § 3553(a) factors, the Court grants the sentence reduction because a sentence at the low end of the Guidelines range is appropriate, and Amendment 821 now slightly shifts downward the Guidelines range.  "A defendant's eligibility for sentencing reduction does not give him an absolute right to reduction."  United States v. Collazo, 2020 WL 601943, at *3.  Rather, courts must ensure that a reduced sentence remains consistent with the § 3553(a) factors, which call upon district courts to evaluate, as pertinent here, "the nature and circumstances of the

offense and the history and characteristics of the defendant," as well as the "need for the sentence . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "to afford adequate deterrence." 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(B).

As the Court states earlier in Section I.E., at the December 11, 2015, Sentencing Hearing, the Court carefully considers the § 3553(a) factors when it concludes that a sentence at the low end of the Guidelines range of 141 to 155 months is appropriate.  See Sentencing Tr. 13:3-9 (Court); PSR ¶¶ 76, 78, at 14.  The Court identifies eight factors that put downward pressure to take the sentence out of the Guidelines range and towards the bottom of the stipulated range in the rule 11(c)(1)(C) Plea Agreement:  (i) the Court can use some supervised release, in place of incarceration, to deal with Hurtado's problems; (ii) Hurtado is remorseful; (iii) he is young; (iv) there may be a chance of hope for him given that he just had a child; (v) because his father was in prison, there is incentive not to repeat the cycle; (vi) he wants to better himself; (vii) supervised release can deal with his addiction to some degree; and (viii) the sentence must be sufficient but not greater than necessary to reflect the § 3553(a) factors.  See Sentencing Tr. at 14:17-15:9-10 (Court); 18 U.S.C. 3553(a).  On the other hand, a similar number of factors put pressure to keep the sentence in the Guidelines range: (i) the offense is very serious; (ii) Hurtado points a gun at a medical professional at a local pharmacy; (iii)  Hurtado intends to distribute the drugs; (iv) the combination of his actions and intent are serious; (v) the sentence must promote respect for the law; (vii) the sentence must provide a just punishment; (viii) the sentence must afford adequate deterrence both at a specific and general level; (ix) the Court must protect the public; (x) the need to avoid unwarranted sentencing disparity among defendants with similar records; and (xi) Hurtado commits a second crime while possessing a gun.  See Sentencing Tr. at 15:11-16:7

(Court).  The factors putting downward pressure and the factors putting upward pressure balance out each other, and the Court also carefully considers Hurtado's request for a variance downwards and the United States' request for a variance upwards pursuant to the rule 11(c)(1)(C) Plea Agreement.  The Court concludes at the December 11, 2015, Sentencing Hearing that the Guidelines range is appropriate for the offense.

The Court sees no sound reason to depart from its analysis of the § 3553(a) factors at sentencing and still concludes today that a Guidelines sentence is appropriate.  Hurtado's disciplinary infractions while incarcerated also have no significant impact on the § 3553(a) factors so as to change the Court's conclusion that a bottom of the Guidelines sentencing range is appropriate.  Hurtado's disciplinary infractions -- possessing and using drugs/alcohol, possessing a non-hazardous tool, assaulting without serious injury, being absent from assignment, refusing to obey an order, and being in an unauthorized area -- are not so serious that they should cause the Court to impose a sentence different than the bottom of the Guidelines sentencing range.  See Retroactive Guideline Amendment Memo at 2.  The Court considers Amendment 821's impact on the Guidelines range and in the end concludes that a new Guidelines sentence of 51 months for the first two counts -- counts one and five -- and one count of the Information reflect the seriousness of the offenses, promote respect of the law, provides just punishment, affords adequate deterrence, both at a specific and general level, protects the public, and avoids unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.  See Sentencing Tr. at 17:3-12 (Court); 18 U.S.C. § 3553(a).  The Court's placement of Hurtado on supervised release effectively provides Hurtado with "needed educational or vocational training" to help him avoid reoccurring problems in the future.  Sentencing Tr. at 17:13-16 (Court); see 18 U.S.C. § 3553(a)(2)(D).  Because Amendment 821 adjusts the Guidelines range to 135

months to 147 months, the Court concludes that a sentence of 135 months at the low end of the new Guidelines range fully and effectively reflects 18 U.S.C. § 3553(a)'s relevant sentencing factors and is sufficient, but not greater than necessary, to comply with the purposes of punishment set forth in the Sentencing Reform Act.  See Sentencing Tr. at 17:16-24 (Court); United States v. Conlan, 500 F.3d at 1169; United States v. Garner, No. CR 09-3207 JB, 2011 WL 1901668 at *1 (D.N.M. May 4, 2011)(Browning, J.)(concluding that the defendant's sentence "fully reflects each of the factors embodied in 18 U.S.C. § 3553(a)" and "is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act.").  While the Court's task as a trial court is not to come up with what it thinks is a reasonable sentence, see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007), the Court concludes that this sentence is reasonable, see United States v. Ellis, No. CR 03-1890, 2008 WL 4811168, at *11 (D.N.M. June 3, 2008)(Browning, J.)("The Court's previous decision to sentence Ellis at the bottom end of the Guidelines range would be reasonable with respect to the recalculated sentence.").  In sum, the Court concludes that Hurtado is not only entitled to a sentence reduction under Amendment 821, but that the § 3553(a) sentencing factors warrant reducing his sentence here to impose one consistent with the new Guidelines range.

   **IT IS ORDERED** that: (i) the Defendant Victor Hurtado's Motion for Compassionate Release, filed March 29, 2021 (Doc. 108), is denied; (ii) the Defendant's Opposed Motion for Sentence Reduction Under Guideline Amendment 821, filed May 31, 2024 (Doc. 159), is granted; (iii) Defendant Victor Hurtado's new Sentencing Guideline range is 135-141 months; and (iv) Hurtado is re-sentenced to 135 months of incarceration.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M.M. Uballez
  United States Attorney
Patrick E. Cordova
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

J.K. Theodosia Johnson
  Assistant Federal Public Defender
Albuquerque, New Mexico

Allen Franco
  Assistant Federal Public Defender
Albuquerque, New Mexico

*Attorneys for the Defendant*